**BEER NUTS, INC., Plaintiff-Appellee,**

v.

**KING NUT COMPANY, Defendant-Appellant.**

**No. 72–1807.**

United States Court of Appeals, Sixth Circuit.

Argued Jan. 29, 1973.

Decided May 2, 1973.

Bruce B. Krost, Cleveland, Ohio, for defendant-appellant; Charles R. Rust, Woodling, Krost, Granger & Rust, Cleveland, Ohio, on brief.

James R. McKnight, Chicago, Ill., for plaintiff-appellee; Teare, Teare & Sammon, Cleveland, Ohio, of counsel.

Before PHILLIPS, Chief Judge, and CELEBREZZE and McCREE, Circuit Judges.

PHILLIPS, Chief Judge.

This is an appeal by King Nut Company from the granting of summary judgment in a trademark infringement action brought under § 32 of the Lanham Act, 15 U.S.C. § 1114. The District Court held that King had infringed the trademark "BEER NUTS"[1] owned by appellee, Beer Nuts, Inc., a permanent injunction and an accounting were ordered. We affirm.

Appellee's predecessor, Brewster Food Service,[2] registered the trademark in 1955 for its brand of shelled, cooked and salted peanuts, which are sold in the tavern market. Beer Nuts, Inc. has used the mark continuously since its registration.

Over the years, King has employed several names to market its brand of similar peanuts. In 1958 the name "KING'S BREW NUTS" was used. Upon discovery of this Brewster contacted King, contending that such a name was an infringement on its trademark. The parties were able to settle this difficulty by entering an agreement on September 15, 1958. That agreement released King from all liability in exchange for King's promise to refrain from using the name "BREW NUTS" and King's recognition of Brewster's ownership and the validity of the trademark "BEER NUTS". The agreement was concluded by a stipulation that the contract would be perpetual and binding on the parties and their assigns.

In 1968 King began to market its peanuts under the name "KING'S BEER NUTS." Each package also included a picture of an overflowing stein of beer. Beer Nuts, Inc. objected and King agreed to discontinue its use. Then King began marketing its product under the title "KING'S SNACK NUTS", continuing the use of the picture. Thereupon Beer Nuts, Inc. brought this suit contending that the words "BEER NUTS" and the continued use of a picture of an overflowing stein of beer on the front of King's packages constituted infringements. The principal defense asserted was that "BEER NUTS" had evolved into a descriptive term causing the trademark to lose its validity.

On April 11, 1972, District Judge Don J. Young held that King was estopped by virtue of the 1958 agreement from contesting the mark's validity. The effect of this holding was to deny King the opportunity to present its defense that "BEER NUTS" was a descriptive

---

1. Registration No. 605,905.

2. Members of the Brewster partnership incorporated Beer Nuts, Inc. in 1960 and assigned their trademark to the corporation.

term not available for appropriation as a trademark. The court further held that the use of the picture and the name "KING'S BEER NUTS" constituted infringements. Judge Young concluded:

"Thus, the only remaining issue before the Court is whether plaintiff is the assignee of Brewster Food Service to the trademark "BEER NUTS." If plaintiff is, summary judgment will be entered on its behalf . . . ."

On June 12, 1972, Judge Young ruled that the plaintiff had demonstrated that it was the assignee of Brewster Food Service and entered summary judgment.

■ King first contends that the 1958 agreement does not preclude the assertion of the defense that the trademark was merely descriptive. We find this argument to be without merit. An assertion that a name is merely descriptive is an attack upon the validity of the trademark. A descriptive mark in appropriate situations will not be recognized as a valid trademark. 3 Callmann, The Law of Unfair Competition Trademarks and Monopolies (3d ed.) §§ 74, 74.2.

King next argues that even if the agreement precludes an attack upon the mark's validity, that agreement should not be .enforced. We recognize that to give effect to such agreements would impede the efficacy of the defense that the words are merely descriptive. It long ·has been recognized that a mark which is valid and enforceable at one point in time may subsequently evolve into an invalid mark. DuPont Cellophane Co., Inc. v. Waxed Products Co., Inc., 85 F.2d 75 (2d Cir.), cert. denied, 299 U.S. 601, 57 S.Ct. 194, 81 L.Ed. 443 (1936); American Thermos Products Co. v. Aladdin Industries, Inc., 207 F. Supp. 9 (D.Conn.1962), aff'd, 321 F.2d 577 (2d Cir. 1963); Bayer Co., Inc. v. United Drug Co., 272 F. 505 (S.D.N.Y. 1921). In the present case, however, we must weigh the public benefit in considering trademark principles in connection with the policy of upholding the law of contracts.

In Lear, Inc. v. Adkins, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969), the Supreme Court was faced with the task of balancing conflicting contract and patent law policies. The Court held that a patent licensee was not estopped by virtue of having negotiated a license agreement from asserting that the patent was invalid. On its face *Lear* might appear to be applicable to trademarks, but we believe a closer analysis mandates a contrary result.

■ Generally, courts uphold the contract principle that a contracting party may not repudiate his promises solely because he later becomes dissatisfied with his bargain. In *Lear* this policy was found to conflict with the patent policy that ideas in general circulation should be available for the public good unless protected by a valid patent. 395 U.S. at 688, 89 S.Ct. 1902.

Our patent system awards an inventor exclusive use of his discovery for a limited period of time in return for his granting to the public full disclosure and, at the expiration of his monopoly, the free use of his discovery. This results not only in stimulating inventiveness but also benefits the consuming public when the discovery becomes available at competitive prices. *See,* Scott Paper Co. v. Marcalus Mfg. Co., Inc., 326 U.S. 249, 66 S.Ct. 101, 90 L.Ed. 47 (1945). Where a monopolist is permitted to operate under color of a patent, which is in fact invalid, ". . . the public may continually be required to pay tribute to would-be monopolists without need or justification." *Lear,* 395 U.S. at 670, 89 S.Ct. at 1911. This overriding consideration of the public interest led the *Lear* Court to conclude that patent law must control.

■■ The principles underlying the law of trademarks are distinguishable. Trademark protection guards the public from being deceived into purchasing an infringing unwanted product. It further protects the owner's investment in advertising and quality control which is often considerable. Stahly, Inc. v. M. H.

Jacobs Co., 183 F.2d 914 (7th Cir.), cert. denied, 340 U.S. 896, 71 S.Ct. 239, 95 L. Ed. 650 (1950). The premise for the defense of descriptiveness was set forth by Judge Hastie in Telechron v. Telicon Corp., 198 F.2d 903, 906 (3rd Cir. 1952):

> "The basic reason for refusing to allow the exclusive appropriation of descriptive words in trademarks is the danger of depleting the general vocabulary available to all for description and denomination of articles of commerce. It is unwise to risk the development of a situation in which those attempting to market their goods will find that they can not use apt normal words or phrases in depicting or characterizing articles because of language preemptions by others. So the legal protection of trademarks is restricted in manner calculated to keep such descriptive words free for all." *Accord,* Proxite Products, Inc. v. Bonnie Brite Products Corp., 206 F.Supp. 511, 515 (S.D.N.Y.1962).

The defense of descriptiveness also has been upheld on the basis of the public's right to have a product properly described. Caron Corp. v. Maison Jeurelle-Seventeen, Inc., 26 F.Supp. 560, 562–563 (S.D.N.Y.1938).

■ When the balancing test is employed in the instant situation, we conclude that the public interest in guarding against the depletion of the general vocabulary available for the description of articles in commerce is not so great that it should take precedence over the rule of the law of contracts that a person should be held to his undertakings. Such a decision is far from unique. In E. F. Prichard Co. v. Consumers Brewing Co., 136 F.2d 512, 522 (6th Cir. 1943), cert. denied, 321 U.S. 763, 64 S. Ct. 486, 88 L.Ed. 1060 (1944), this court held that a contract declaring one party to be the owner of a trademark would estop the other party from later contesting the mark's title. In Peyrat v. L. N. Renault & Sons, Inc., 247 F.Supp. 1009 (S.D.N.Y.1965), it was held that a contract between a trademark registrant and another, which permitted the other party to use the mark, would bind the registrant.

■ King also contends that the District Court erred in determining that the use of the picture of a stein of beer on the front of the King packages constitutes an infringement. The essence of the wrong of trademark infringement is the passing off of the goods of one as those of another. Hemmeter Cigar Co. v. Congress Cigar Co., 118 F.2d 64 (6th Cir. 1941). Under the statute liability is imposed upon those who use a mark likely to cause confusion with a registered mark. 15 U.S.C. § 1114. The test is whether the infringing mark taken as a whole so far resembles the trademark as to be likely to cause a casual or unwary purchaser to mistake it for the original. 118 F.2d at 70. The degree of similarity may be less where inexpensive goods are involved. This is premised upon the notion that purchasers will pay less attention to the goods they are buying where the goods are relatively cheap. Calimofde, Trademarks and Unfair Competition § 10.24.

■ It is well settled that words and their pictorial representation are treated the same in determining the likelihood of confusion between two marks. Shunk Mfg. Co. v. Tarrant Mfg. Co., 318 F.2d 328, 50 CCPA 1325 (1963); Pink Lady Corp. v. L. N. Renault & Sons, Inc., 265 F.2d 951, 46 CCPA 865 (1959). As the picture in the present case is to be given the same effect as the word "beer", we conclude that the District Court's determination was correct.

■ King further argues that the District Court erred in failing to compel more complete answers to its second, third and fourth sets of interrogatories, its requests for admissions, and in failing to permit an amendment to its pleading. The motion to compel answers to the second and third sets of interrogatories was denied for failure to comply with a local rule of court. That rule provided that before a party can seek

the court's aid in discovery, that party must first notify the court of its attempts to resolve the controversy.[3] Since we do not find this rule inconsistent with the federal rules, we hold the District Court's action was proper. Rule 83, Fed.R.Civ.P.; Joseph v. Norton Co., 273 F.2d 65 (2d Cir. 1959).

■ The fourth set of interrogatories, the request for admissions and the motion for leave to file an amended complaint,[4] were all filed subsequent to the District Court's April 11, 1972, opinion. The April 11 opinion found King to be an infringer and held Beer Nuts, Inc. entitled to relief subject to its demonstrating that it is the assignee of the Brewster Food Service trademark. On June 12, 1972, a second opinion was issued wherein the court found that the corporation was the legitimate assignee of the partnership and entered its order of summary judgment. We believe that the April 11 opinion had the effect of partial summary judgment. All material issues were resolved except the assignment issue. As these contentions do not relate to the assignment, we must treat these motions as being made after the entry of summary judgment, and as such it was not improper to deny them. Butler v. Pettigrew, 409 F.2d 1205 (7th Cir. 1969); Weiss v. United States, 199 F.2d 454 (2d Cir. 1952), cert. denied, 344 U.S. 934, 73 S.Ct. 504, 97 L.Ed. 718, reh. denied, 345 U.S. 914, 73 S.Ct. 643, 97 L.Ed. 1348 (1953).

Finally it is argued that summary judgment is improper because genuine issues of material fact remained. Fed. R.Civ.P. 56. King contends that "BEER NUTS" is descriptive when applied to the products involved in this case. Therefore, it asserts a genuine issue of material fact remains. Since King is precluded from contesting the validity of the trademark, the question of descriptiveness becomes irrelevant.

All other contentions made by appellant have been considred and are found to be without merit.

Affirmed.

3. Rule 2(a)(6) of the local rules for the United States District Court for the Northern District of Ohio provides:
  "Counsel are encouraged to participate in pre-trial discovery conferences to reduce, in every way possible, the filing of unnecessary discovery procedures. To curtail undue delay in the administration of justice, no discovery procedure filed under Rules 26 through 37 of the Federal Rules of Civil Procedure to which objection or opposition is made by the responding party shall be taken under consideration by the Court, unless the party seeking discovery shall first advise the Court in writing that after personal consultation and sincere attempts to resolve differences they are unable to reach an accord. This statement shall recite those matters which remain in dispute, and in addition, the date, time and place of such conference, and the names of all parties participating therein. It shall be the responsibility of counsel for the party seeking discovery to initiate such personal consultation."

4. The proposed amendment attempted to raise a completely new issue involving the equitable concept of "clean hands"; it should therefore be distinguished from a situation where the party attempts to conform the pleadings to the evidence.