**MWS WIRE INDUSTRIES, INC.,
Plaintiff, Appellant, and
Cross-Appellee,**

v.

**CALIFORNIA FINE WIRE CO., INC.,
Defendant, Appellee, and
Cross-Appellant.**

Nos. 85–6359, 85–6396.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 6, 1986.

Decided Aug. 19, 1986.

Michael D. Harris, Koppel & Harris, Westlake Village, Cal., for plaintiff, appellant, and cross-appellee.

I. Morley Drucker, Howard N. Sommers, Drucker & Sommers, Beverly Hills, Cal., for defendant, appellee, and cross-appellant.

Before FARRIS and CANBY, Circuit Judges and INGRAM,* District Judge.

FARRIS, Circuit Judge:

On November 16, 1982, the United States Patent and Trademark Office entered the mark "MULTIFILAR" on its Principal Register, specifying that the mark was used in connection with "magnet wire." MULTIFILAR was registered in the name of plaintiff MWS Wire Industries and was assigned Registration Number 1,216,494. In June 1983, *Wire Journal International* published an article authored by George L. Stewart, sales manager for defendant California Fine Wire Company in which the term "multifiler" appeared. By letter dated July 1, 1983, Michael D. Harris, counsel for MWS (1) advised CFW that MWS was the registered owner of the trademark MULTIFILAR, (2) asserted that Stewart's use of the term infringed MWS's trademark, and (3) demanded that CFW, in writing, (a) acknowledge the validity of MWS's trademark, and (b) promise to make no further use of MULTIFILAR or any other word likely to be confused with it. In return, MWS would agree to "waive any past damages for trademark infringement." On July 15, 1983, CFW president Michael A. Greenelsh wrote to Robert H. Mott, counsel for CFW, enclosing Harris's letter. Greenelsh indicated that CFW seemed to have infringed MWS's trademark, but had done so unintentionally under the assumption that multifilar "was a generic term used to describe any wire configuration consisting of more than one

conductor bonded together by film or varnish-like insulation." Mott was to inquire into the validity of the trademark. If it proved valid, he was to "comply with [MWS's] request for a statement regarding the use of their trademark." On July 26, 1983, in response to a request from Mott, Harris furnished Mott a copy of MWS's trademark registration. Harris again requested "an acknowledgement that our client's registration is valid and that your client will not infringe the trademark in the future." Mott responded by letter dated August 1, 1983:

Thank you for your letter of July 26, 1983 and a copy of the trademark. I have advised my client to cease using *"Multifilar"* in any public documents. Based upon the information made available to me, I have advised my client the trademark appears to be valid and that they should not infringe the trademark.

It is further understood between our clients that no claim for damages will be asserted against California Fine Wire Co. for any past activities.

By letter of March 1, 1984, Harris complained to Mott that California Fine Wire had breached its "agreement to cease use of MULTIFILAR" by referring to "multifilar" in its 1984 listing in the *Thomas Register*, a leading trade product directory. On behalf of MWS, Harris "insist[ed] that CFW be bound by a written agreement in the form attached signed by one of its officers." A draft agreement acknowledging the validity of the trademark and providing liquidated damages for each future use by CFW of MULTIFILAR "or any confusingly similar term" accompanied the letter. On April 17, 1984, Greenelsh responded on behalf of CFW:

I have reviewed our brochures and other forms of advertising that are being used by California Fine Wire Company. We do not make use of your clients [sic]

* The Honorable William A. Ingram, United States District Judge for the Northern District of California, sitting by designation.

trademark at this time, and we do not plan to use it in the future.

By complaint filed May 16, 1984, MWS brought this action against CFW alleging trademark infringement, unfair competition, breach of contract, and fraud. On July 10, 1984, CFW filed its amended answer denying factual allegations central to each claim, and asserting various affirmative defenses. Additionally, CFW counterclaimed (1) for cancellation of MWS's federal trademark registration, (2) for declaratory judgment that MWS's alleged trademark was invalid, that CFW had not infringed any valid trademark, and that the contract allegedly created by the exchange of letters in the summer of 1983 was void and unenforceable due to mutual mistake or fraud, or both, and (3) for damages for fraud and fraudulent trademark registration. CFW requested an award of attorneys' fees under 15 U.S.C. § 1117. The district court had jurisdiction under 28 U.S.C. § 1338, 15 U.S.C. § 1121, and the doctrine of pendent jurisdiction, *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

On September 25, 1985, the district court entered summary judgment declaring MWS's trademark invalid and not infringed, cancelling the registration, and dismissing all of MWS's claims for damages. The court found that the term "multifilar" was "merely descriptive of the goods of plaintiff," and had acquired no secondary meaning. Therefore MWS "could not have validly registered such mark, and ... could not have acquired any common law or rights [sic] therein [nor could it] assert any rights, under the laws of unfair competition." Additionally, the court found that "[t]he mark in issue [was] also used in its common, primary or generic sense and [could not] acquire a secondary meaning, nor [could] it acquire any trademark significance." Based on its conclusion that the term multifilar "was not, and is not, a trademark," the court held that the "pur-

ported agreement" whereby CFW promised not to use the term multifilar in commerce in return for MWS's promise not to sue for past infringement was "rescinded and voided" for "total failure of consideration" and "mistake of fact or law." The judgment was silent as to CFW's counterclaim for damages and its request for attorneys' fees. On October 4, 1985, MWS filed a timely notice of appeal from the judgment of September 25, 1985. Fed.R.App.P. 4(a)(1). We have jurisdiction under 28 U.S.C. § 1291 and 15 U.S.C. § 1121.[1]

We review the grant of summary judgment *de novo* to determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *General Accident Insurance Co. v. Namesnik*, 790 F.2d 1397, 1398 (9th Cir.1986). "[Q]uestions of state law are reviewable under the same *de novo* standard as are questions of federal law." *In re McLinn*, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc).

In its complaint MWS alleged that by the letter of August 1, 1983 CFW acknowledged the validity of MWS's trademark and agreed to stop infringing MWS's trademark rights in return for MWS's promise not to sue for past infringement. CFW admitted the existence of the August 1st letter from Mott to Harris but disputed its significance. The district court did not resolve this dispute because it concluded that the asserted trademark was invalid and that consequently any settlement contract between the parties was void for failure of consideration and mutual mistake.

■ The district court erred in inquiring into the validity of the trademark before resolving the question of whether the exchange of letters in the summer of 1983 created a contract. The record does not support the district court's conclusion that the compromise agreement alleged by MWS was void for failure of consideration

---

1. On October 17, 1985, CFW filed a notice of appeal from the district court's failure to award it attorneys' fees. Because we reverse the district court's entry of summary judgment, we need not decide whether the district court's silence concerning CFW's request for attorneys' fees may properly be construed as an appealable final judgment denying that request.

or mutual mistake. If a compromise agreement arose out of the exchange of letters, CFW is estopped to assert the invalidity of MWS's trademark as a defense to MWS's claims. As the entry of summary judgment was predicated upon the invalidity of the trademark, we vacate the judgment and remand for determination of whether a contract arose out of the exchange of correspondence. If no contract was formed, then (1) MWS's claim for breach of contract necessarily fails as a matter of law, and (2) CFW is free to assert the invalidity of the trademark as a defense to the remaining claims. If, on the other hand, a settlement agreement was formed, CFW is estopped to challenge the validity of the trademark in such future proceedings as may be required to dispose of MWS's various claims. On remand, the trial court shall determine the nature of the proceedings, if any, required to ascertain the effect of the exchange of correspondence.

There is an "overriding public interest in settling and quieting litigation." *United States v. McInnes,* 556 F.2d 436, 441 (9th Cir.1977). *See also Williams v. First National Bank,* 216 U.S. 582, 595, 30 S.Ct. 441, 445, 54 L.Ed. 625 (1910); *Golden v. Faust,* 766 F.2d 1339, 1341 (9th Cir.1985). Promotion of this policy requires judicial enforcement of settlement agreements. If the merits of a cause of action underlying a compromise agreement could, as a matter of course, be inquired into in an action to enforce the settlement, neither settlement nor the policies it promotes would be fostered. The parties would be subjected to the expense, delay, and uncertainty they sought to avoid through settlement; the court would be burdened with trial of the underlying dispute and the preparation which precedes it. Accordingly, the courts of California regard a settlement agreement as tantamount to a judgment. *Gorman v. Holte,* 164 Cal.App.3d 984, 988, 211 Cal.Rptr. 34, 37 (1985). "[I]n the absence of a showing of fraud or undue influence [a settlement] is decisive of the rights of the parties thereto and operates as a bar to the reopening of the original controversy." *Folsom v. Butte County Association of*

*Governments,* 32 Cal.3d 668, 677, 186 Cal. Rptr. 589, 595, 652 P.2d 437, 443 (1982) (quoting *Shriver v. Kuchel,* 113 Cal.App.2d 421, 425, 248 P.2d 35, 38 (1952)). *See also Union Collection Co. v. Buckman,* 150 Cal. 159, 163, 88 P. 708, 710 (1907) (compromise of an action "constitutes a sufficient consideration for a new promise and is a bar to all inquiry as to the merits of the original claim" so long as the compromise agreement is "made in good faith of a claim honestly asserted").

We reject CFW's contention that the district court properly voided the settlement agreement for failure of consideration or mutual mistake. The court did not find that MWS asserted its trademark rights in bad faith or with intent to defraud. There is no finding that MWS's claim of trademark rights was "wholly without foundation, and known to the claimant to be so." *Union Collection,* 150 Cal. at 163, 88 P. at 710. Under California law, "[f]orbearance to make use of some legal remedy is sufficient consideration for a promise. Also forbearance to press a claim or a promise of such forbearance, may be a sufficient consideration even though the claim is wholly ill founded." *Healy v. Brewster,* 251 Cal.App.2d 541, 551, 59 Cal.Rptr. 752, 758 (1967). *See also Salmeron v. United States,* 724 F.2d 1357, 1363 (9th Cir.1983) ("forbearance to prosecute a disputed claim is good consideration."). MWS alleged that it agreed not to sue CFW for past infringement in return for CFW's promise not to infringe in the future. There is no indication that MWS breached its promise to forbear. The district court's post hoc conclusion that the term "multifilar" does not merit trademark protection does not undercut the value of MWS's forbearance as consideration at the time of the settlement. The record does not support the district court's conclusion that the settlement agreement was voidable for lack of consideration.

 CFW represents that upon receipt of a copy of MWS's registration of MULTIFILAR it concluded, without further investigation, that the trademark was valid. In

other words, CFW claims to have entered into a settlement agreement in reliance on its adversary's representation concerning the strength of its legal claim. If this was error, it was certainly not the sort warranting recission of a settlement contract. The validity of the trademark was the disputed legal center of MWS's cause of action. CFW could have challenged the validity of the trademark in 1983. Instead, it elected to avoid the risks of litigation. A party's mistaken evaluation of the legal merit of its claim or defense is not the sort of mistake which warrants recission of an agreement settling a dispute. *A.J. Industries Inc. v. Ver Halen,* 75 Cal.App.3d 751, 759, 142 Cal.Rptr. 383, 388 (1977) ("A party to a settlement agreement may not seek to rescind it by proving the merits of his original claim and then establishing that an erroneous assessment by him of that claim led to the settlement."). The district court erred in rescinding the settlement agreement as a product of mutual mistake.

In *Beer Nuts, Inc. v. King Nut Company,* 477 F.2d 326 (6th Cir.), *cert. denied,* 414 U.S. 858, 94 S.Ct. 66, 38 L.Ed.2d 108 (1973), the Court of Appeals for the Sixth Circuit held that a 1958 agreement settling a trademark infringement action threatened by Beer Nuts's predecessor barred King Nut Company from contesting the validity of the "BEER NUTS" trademark in a 1972 infringement action brought by Beer Nuts. Under the 1958 agreement, King Nut acknowledged the validity of the trademark "BEER NUTS" and promised to refrain from using the similar mark "BREW NUTS" in return for the predecessor corporation's promise not to sue King Nut for past infringement. When Beer Nuts sued King Nut for infringement in 1972, King Nut "asserted ... that 'BEER NUTS' had evolved into a descriptive term causing the trademark to lose its validity." 477 F.2d at 327. The 6th Circuit recognized that "a mark which is valid and enforceable at one point in time may subsequently evolve into an invalid mark," *id.* at 328, but concluded that "the public interest in guarding against the depletion of the general vocabulary available for the description of articles in commerce is not so great that it should take precedence over the rule of the law of contracts that a person should be held to his undertakings." *Id.* at 329. Thus, by virtue of the 1958 settlement agreement, King Nut was estopped to assert the defense that by 1972 "BEER NUTS" had become "merely descriptive" and thus unprotected. *Id.* at 328.

CFW would distinguish *Beer Nuts* on the ground that King Nut did not question the validity of the 1958 agreement but claimed only that "BEER NUTS" had subsequently evolved into an unprotectable descriptive term, whereas CFW persuaded the district court that "MULTIFILAR" was unprotectable at the time the parties entered into the alleged settlement agreement, rendering that agreement void *ab initio.* The distinction lacks legal significance. The policy considerations underlying the *Beer Nuts* holding are, if anything, more compelling under the facts here present. CFW could have challenged the validity of the contested trademark prior to entering into the alleged agreement not to infringe. As King Nut contended only that the "BEER NUTS" mark evolved into a descriptive term, the ground upon which it challenged the trademark in 1972 did not exist in 1958. To permit CFW to reopen the question of the validity of the trademark at this juncture would severely undercut the policy favoring the amicable resolution of trademark disputes without resort to the courts. *Cf. Visa International Service Association v. Bankcard Holders of America,* 784 F.2d 1472, 1473 (9th Cir.1986) (party entering into settlement agreement with respect to trademark "will be held to his contract unless enforcement of the contract would result in injury to the public through confusion"); *Wells Cargo, Inc. v. Wells Cargo, Inc.,* 606 F.2d 961, 965 (C.C.P.A.1979) ("If there be a policy favoring challenges to trademark validity, it ... has been viewed as outweighed by the policy favoring settlements."); *T & & Manufacturing Co. v. A.T. Cross Company,* 587 F.2d 533, 539 (1st Cir.1978) (noting "the judicial policy of

**804**

encouraging extra-judicial settlement of trademark litigation"), *cert. denied,* 441 U.S. 908, 99 S.Ct. 2000, 60 L.Ed.2d 377 (1979). We endorse the logic and adopt the holding of *Beer Nuts.*

The alleged settlement agreement is supported by adequate consideration and is not voidable for mutual mistake. We remand to the district court for determination of whether the exchange of letters in the summer of 1983 created a legally binding settlement agreement. If there was a meeting of the minds evidenced by a valid offer and acceptance, CFW is estopped by virtue of that agreement from asserting the invalidity of the trademark as a defense to MWS's claims. CFW may, of course, raise any other defenses available to it. If the district court finds that no settlement contract was formed, the breach of contract action fails as matter of law, and CFW is free to assert the invalidity of the trademark as a defense to the remaining claims. The cross-appeal filed by CFW is dismissed as moot.

REVERSED AND REMANDED.