# United States Court of Appeals for the Federal Circuit

2007-1432
(Cancellation No. 92/045,050)

NASALOK COATING CORPORATION,

Appellant,

v.

NYLOK CORPORATION,

Appellee.

Erik M. Pelton, Erik M. Pelton, Attorney at Law, of Arlington, Virginia, argued for appellant.

Richard B. Megley, Jr., Niro, Scavone, Haller & Niro, of Chicago, Illinois, argued for appellee. With him on the brief was Thomas G. Scavone ,

Appealed from:    United States Patent and Trademark Office
                  Trademark Trial & Appeals Board

# United States Court of Appeals for the Federal Circuit

2007-1432
(Cancellation No. 92/045,050)

NASALOK COATING CORPORATION,

Appellant,

v.

NYLOK CORPORATION,

Appellee.

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board.

_____

DECIDED:  April 14, 2008
_____

Before NEWMAN, GAJARSA, and DYK, <u>Circuit Judges</u>.

Opinion for the court filed by <u>Circuit Judge</u> DYK.  <u>Circuit Judge</u> NEWMAN concurs in the judgment.

DYK, <u>Circuit Judge</u>.

Appellant Nasalok Coating Corporation ("Nasalok") appeals from a decision of the Trademark Trial and Appeal Board ("Board").  The Board granted summary judgment in favor of appellee Nylok Corporation ("Nylok") in a cancellation proceeding brought by Nasalok.  The Board held that Nasalok's claims were barred by res judicata (claim preclusion).  We affirm.

BACKGROUND

Both parties in this case are engaged in business related to self-locking fasteners using nylon locking elements. A nylon element, such as a patch or strip of nylon, is applied to the threads of such a fastener, and prevents the fastener from loosening when exposed to vibration, stress, or temperature extremes. Appellant Nasalok, a Korean corporation, applies nylon coatings to self-locking fasteners for use in industrial applications. Although Nasalok does business primarily in Korea and other parts of Asia, its products are purchased by many companies based in the United States, or whose product end users are located in the United States. Appellee Nylok, a U.S. corporation, manufactures and sells a variety of fasteners, including self-locking fasteners. Nylok is the owner of federal trademark Registration No. 2,398,840 ("'840 Registration"). The registered mark consists of "a patch of the color blue on a selected number of threads of an externally threaded fastener, with the blue patch extending more than 90 degrees and less than 360 degrees around the circumference of the fastener." '840 Registration. The mark is designated for use on "metal externally threaded fasteners." Id.

On November 18, 2003, Nylok filed a complaint against Nasalok (and four other companies that are not parties in the present case) in the United States District Court for the Northern District of Illinois, alleging infringement of several trademarks, including the '840 Registration. Although properly served with the complaint, Nasalok failed to enter an appearance, and the district court entered a default judgment of trademark infringement in favor of Nylok on May 12, 2005. On May 31, 2005, the district court entered an injunction against Nasalok prohibiting the company from "selling within or

importing to the United States of America any self-locking fastener having a nylon locking element . . . having the color blue, or any color confusingly similar to the color blue," and from "promoting or advertising the color blue in the United States of America on or in association with any self-locking fastener, except when Nasalok has received express and written permission by Nylok." J.A. at 79. The district court's order also stated that Nylok is the proper owner of the '840 Registration and that the trademark is valid and enforceable. Nasalok did not appeal the district court's order.

In October 2005, five months after the default judgment, Nasalok filed a petition to cancel the '840 Registration with the Board. The petition alleged that the registered mark is invalid because it is functional, a phantom mark, descriptive, generic, not distinctive, and ornamental; that Nylok's use has not been substantially exclusive; and that Nylok fraudulently obtained the '840 Registration by stating in its amended application that the mark had become distinctive of Nylok's goods through substantially exclusive and continuous use in interstate commerce for five years. Nylok moved for summary judgment, arguing that Nasalok was barred, under the doctrine of res judicata, from claiming that the '840 Registration was invalid because it could have asserted, but did not assert, a claim of invalidity in the earlier infringement action brought by Nylok.[1]

On March 28, 2007, the Board granted summary judgment in favor of Nylok. The Board held that the doctrine of claim preclusion barred Nasalok's cancellation petition. Applying the three-part test for claim preclusion set out by this court in Jet, Inc. v. Sewage Aeration Systems, 223 F.3d 1360 (Fed. Cir. 2000), the Board determined that

---

[1] Indeed 15 U.S.C. § 1119 specifically authorizes cancellation claims in district court proceedings.

the infringement action and the cancellation petition involved the same parties, that the infringement action had been a final judgment on the merits, and that the cancellation petition "ar[o]se out of the same transactional facts as those present in the civil action," because it was "an attack on the registration that was adjudicated in the prior case." J.A. at 6; see Jet, 223 F.3d at 1362. Nasalok timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(B) (2000).

DISCUSSION

The Board's determination that Nasalok's claims are barred by res judicata, and its grant of summary judgment, are questions of law which we review without deference. See Sharp Kabushiki Kaisha v. Thinksharp, Inc., 448 F.3d 1368, 1370 (Fed. Cir. 2006); Jet, 223 F.3d at 1362.

I

This case involves the doctrine of res judicata, which includes the two related concepts of claim preclusion and issue preclusion. See Restatement (Second) of Judgments, ch. 3, Introductory Note (1982). Claim preclusion refers to "the effect of foreclosing any litigation of matters that never have been litigated, because of a determination that they should have been advanced in an earlier suit." 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4402 (2d ed. 2002); see also Nevada v. United States, 463 U.S. 110, 129-30 (1983) (a final judgment is "a finality as to the claim or demand in controversy . . . not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose" (quoting Cromwell v. County of Sac, 94 U.S. 351, 352 (1877))). Issue preclusion, also called

2007-1432                                   4

collateral estoppel, refers to "the effect of foreclosing relitigation of matters that have once been litigated and decided." Wright, Miller & Cooper § 4402. Only the doctrine of claim preclusion is relevant in this case since the issues in the earlier case were not actually litigated.[2]

Typically, claim preclusion is applied against a plaintiff who brings a second action related to an earlier action. The test employed by the Board here is the test applied to determine whether such a second action by the earlier plaintiff is precluded. For example, in Jet, the appellant had brought a trademark infringement action against the appellee in district court, alleging that the appellee's use of its own registered mark was likely to cause confusion in the marketplace. The district court entered judgment for the appellee, holding that there was no likelihood of confusion. The appellant also had brought a cancellation proceeding at the Board, which was resolved after the judgment in the district court infringement suit. The Board held that the cancellation was barred by claim preclusion, because both the infringement action and the cancellation proceeding were based on the likelihood of confusion between the two marks, and therefore the Board considered them the same claim. Jet, 223 F.3d at 1361-62. In reversing the Board's decision, we set out the three-part test for claim preclusion: "(1) there is identity of parties (or their privies); (2) there has been an earlier final judgment on the merits of a claim; and (3) the second claim is based on the same set of transactional facts as the first." Id. at 1362. Applying this test, we concluded that the third requirement was not met because the infringement claim and the cancellation

---

[2]      The fact that the district court stated in its decision that "Nylok's color blue trademark is valid and enforceable in the United States," J.A. at 135, does not invoke collateral estoppel because that issue was not litigated.

proceeding were not based on the "same set of factual allegations." Id. at 1363. We found four significant differences between an infringement claim and a petition to cancel: (1) a plaintiff asserting an infringement claim must have a valid registered mark, while a petitioner in a cancellation proceeding need not; (2) infringement requires that the defendant have used the mark in commerce, while cancellation does not; (3) a respondent to a cancellation proceeding must hold a federally registered mark, while an infringement defendant need not; and (4) cancellation, but not infringement, requires inquiry into the registrability of the mark in question. Id. at 1364.

The test used in Jet cannot be used as the exclusive test for preclusion against a defendant in the first action. In such circumstances, the somewhat different rules of "defendant preclusion" apply. See generally Wright, Miller & Cooper § 4414 (discussing rules and application of defendant preclusion). A defendant is precluded only if (1) the claim or defense asserted in the second action was a compulsory counterclaim that the defendant failed to assert in the first action, or (2) the claim or defense represents what is essentially a collateral attack on the first judgment. See Baker v. Gold Seal Liquors, Inc., 417 U.S. 467, 469 n.1 (1974) ("A counterclaim which is compulsory but is not brought is thereafter barred . . . ."); Restatement (Second) of Judgments § 18(2) (defenses raised, or which could have been raised, in first action are not precluded in subsequent action, except when used to attack the judgment in the first action); id. § 22(2) (defendant who fails to interpose counterclaim in first action is precluded from maintaining action on the claim if counterclaim was compulsory in first action or if "successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action").

II

Nylok urges that Nasalok was required to raise the invalidity issue as a counterclaim in the district court action. We first consider whether trademark invalidity, the basis of Nasalok's petition to cancel the '840 Registration, was a compulsory counterclaim in the trademark infringement action brought by Nylok. Federal Rule of Civil Procedure 13(a)(1) provides:

> A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against the opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction.

The test for whether a counterclaim is compulsory is very similar to the test set out in Jet for determining when a subsequent claim by the plaintiff in the first action is precluded. The third factor of the Jet test asks whether both claims are based on the "same set of transactional facts," while Rule 13(a) applies when the counterclaim arises out of the same "transaction or occurrence" that forms the subject matter of the plaintiff's claim.

In response to an action for infringement, a defendant may assert a counterclaim of invalidity. District courts have the authority, in any action involving a registered trademark, to "determine the right to registration" and "order the cancellation of registrations, in whole or in part." 15 U.S.C. § 1119. This statute allows a trademark infringement defendant to assert a counterclaim to cancel the registration, but the question remains whether such a counterclaim is compulsory or permissive. Surprisingly, we have been unable to locate any court of appeals decisions, in our circuit or any other circuit, directly addressing the question of whether a claim of

trademark invalidity is a compulsory counterclaim to a claim of trademark infringement.[3] For several reasons we conclude that it is not.

The subject matter of the plaintiff's infringement claim in the first proceeding and the subject matter of the invalidity claim in the cancellation proceeding do not arise out of the same "transaction or occurrence." Fed. R. Civ. P. 13(a)(1)(A). The Supreme Court has explained the "transaction or occurrence" test in discussing former Equity Rule 30, on which current Rule 13(a) is based. See Fed. R. Civ. P. 13 advisory committee's note 1 ("This is substantially [former] Equity Rule 30 . . . broadened to include legal as well as equitable counterclaims."); Moore v. N.Y. Cotton Exch., 270 U.S. 593 (1926). The plaintiff in Moore had sought permission to receive quotations of cotton prices from the defendant's exchange, and its application had been refused. The plaintiff then brought an antitrust claim against the exchange based on this refusal, and the exchange counterclaimed, asserting that the plaintiff was stealing the quotations and seeking an injunction against continued misappropriation. The district court dismissed the plaintiff's claim, and entered the injunction sought by the defendant. The Supreme Court affirmed the judgment, holding that because the counterclaim was compulsory the district court retained jurisdiction to rule on the counterclaim after the plaintiff's claim was dismissed. The Court noted that the basis of the counterclaim was "one of the links in the chain which constitutes the transaction upon which appellant here bases its cause of action," that the common ground between the claim and

---

[3] The Board's rules of procedure in trademark cases provide that invalidity of a registration pleaded in an opposition or cancellation proceeding is a compulsory counterclaim. See 37 C.F.R. §§ 2.106(b)(2)(i), 2.114(b)(2)(i) (2007). However, these rules of course do not apply to an infringement action brought in a district court.

counterclaim was "the one circumstance without which neither party would have found it necessary to seek relief," and that "[e]ssential facts alleged by appellant enter into and constitute in part the cause of action set forth in the counterclaim." Moore, 270 U.S. at 610.

Following the Moore decision, our court has utilized three tests to determine whether the "transaction or occurrence" test of Rule 13(a) is met: (1) whether the legal and factual issues raised by the claim and counterclaim are largely the same; (2) whether substantially the same evidence supports or refutes both the claim and the counterclaim; and (3) whether there is a logical relationship between the claim and the counterclaim. See Polymer Indus. Prods. Co. v. Bridgestone/Firestone Inc., 347 F.3d 935, 937 (Fed. Cir. 2003); Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d 795, 801 (Fed. Cir. 1999); see also 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1410 (2d ed. 1990).[4] In each of the three tests for what constitutes the same "transaction or occurrence," the question is the extent of factual overlap between what the plaintiff must establish to prove its claim and what the defendant must establish to prove its counterclaim. The mere possibility that, as a result of affirmative defenses, the first suit might involve additional issues does not obligate the defendant to assert those affirmative defenses as a counterclaim.

In this case, Nylok's trademark infringement claim was based on Nylok's alleged ownership of a registered mark, Nasalok's alleged use of the color blue in nylon patches on the external threads of self-locking fasteners, its promotion of those fasteners in

---

[4] Sometimes a fourth test has also been used: whether res judicata would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule.

advertisements in publications distributed in the United States, and the likelihood of confusion of the consuming public as a result of Nasalok's activities. Invalidity of the mark was an affirmative defense that could have been raised, not part of the plaintiff's cause of action. See Packman v. Chi. Tribune Co., 267 F.3d 628, 639 (7th Cir. 2001) (defendant may attack validity of mark by asserting various defenses); 6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 34:5 (4th ed. 1996) (listing defenses to trademark infringement, including "Attack on Validity of U.S. Trademark Registration"); see also 15 U.S.C. § 1115(a) (registration of mark that has not yet become incontestable is prima facie evidence of validity). Nasalok's cancellation petition, by contrast, was based on alleged attributes of Nylok's registered mark that rendered it subject to cancellation, including allegations that the mark was functional and was a phantom mark, and on Nylok's allegedly fraudulent actions in obtaining registration of the mark. In this case, therefore, the "essential facts" alleged by Nylok in its infringement action—related to Nylok's ownership of the mark and Nasalok's allegedly infringing behavior—do not form the basis of the cancellation claim now asserted by Nasalok, which is based on attributes of Nylok's mark and on Nylok's actions in obtaining registration of that mark. The two claims raise different legal and factual issues, will not be supported or refuted by substantially the same evidence, and are not "logically related" in the sense described by the Supreme Court in Moore. Therefore, the claims do not arise out of the same "transaction or occurrence," and the petition to cancel was not a compulsory counterclaim in the infringement action.

---

See Wright, Miller & Kane § 1410 & n.8. That test is circular, however, and we think it is not a useful way of determining whether a counterclaim is compulsory under Rule 13(a).

While we have not previously directly decided whether a claim of invalidity is a compulsory counterclaim in an action for infringement, we have explicitly held that a determination of patent infringement in an infringement suit, or even an explicit determination of patent validity, does not preclude the assertion of an invalidity defense in a second action involving different products. In <u>Foster v. Hallco Manufacturing Co.</u>, 947 F.2d 469 (Fed. Cir. 1991), the first infringement action had resulted in a consent judgment of infringement as to particular products. <u>Id.</u> at 472. The alleged infringer also acknowledged that the patents in suit were "valid and enforceable in all respects." <u>Id.</u> Nonetheless, we held that claim preclusion would not bar defendant's later declaratory judgment action challenging those patents' validity if the devices involved in the two suits were not "essentially the same." <u>Id.</u> at 480.

In <u>Hallco Manufacturing Co. v. Foster</u>, 256 F.3d 1290 (Fed. Cir. 2001), the first infringement suit was resolved by the parties in a settlement agreement that did not address the patent's validity. The defendant later brought a declaratory judgment action seeking a determination that the same patent was invalid. We reached the same conclusion in <u>Hallco</u> as we had in <u>Foster</u>: if both suits involved devices that were "essentially the same or only colorably different," the invalidity claim would be precluded, but not otherwise. <u>Id.</u> at 1298. We explained that the plaintiff and defendant should be treated equally as to res judicata. If the plaintiff would not be barred from bringing a second infringement suit, the defendant also should not be precluded from challenging patent validity in the second suit. <u>See</u> <u>id.</u> at 1297. In <u>Ecolab, Inc. v. Paraclipse, Inc.</u>, 285 F.3d 1362 (Fed. Cir. 2002), a consent judgment of infringement was entered in the first action, and the consent judgment also determined that the

patent was valid. Id. at 1367. We reaffirmed that preclusion as to validity applies only "if the accused product in the second suit [is] 'essentially the same' as the specific device that was before the court in the first suit." Id. at 1376.[5] These patent cases necessarily assume that an invalidity defense is not a compulsory counterclaim, because in each of these cases a counterclaim of invalidity could have been asserted,[6] and we refused to find general preclusion of the invalidity defense.

Moreover, the policy considerations driving those decisions are equally applicable here. At the time of an infringement suit, it will be difficult to anticipate the new products and future disputes that may later arise between the two parties. A plaintiff who brings an infringement suit as to one allegedly infringing use of a mark would not be precluded from later bringing a second infringement suit as to another use; similarly, a defendant in the first infringement suit should not be precluded from raising invalidity of the mark in the second action simply because it was not raised as a counterclaim in the first action.

Finally, treating challenges to trademark validity as compulsory counterclaims to infringement actions would violate the well-established policy of freely allowing challenges to the validity of claimed intellectual property protection. In Lear, Inc. v. Adkins, 395 U.S. 653 (1969), the Supreme Court repudiated the rule of patent licensee

---

[5] However, where the first action results in a consent judgment of patent validity in which the alleged infringer affirmatively agrees not to "directly or indirectly aid, assign, or participate in any action contesting the validity" of the patents, the defendant is precluded from asserting a claim or defense of patent invalidity in a subsequent action, even where the second action involves a new device. Diversey Lever, Inc. v. Ecolab, Inc., 191 F.3d 1350, 1352 (Fed. Cir. 1999).

[6] In Foster, a counterclaim of invalidity was originally asserted but was dismissed in light of the consent judgment. 947 F.2d at 472 & n.1.

estoppel, under which a licensee is prohibited from challenging the validity of the patent that is the basis of the license agreement. The Court found that, among other reasons, "the strong federal policy favoring the full and free use of ideas in the public domain," id. at 674, outweighed the contract law principle "that forbids a purchaser to repudiate his promises simply because he later becomes dissatisfied with the bargain he has made." Id. at 668.

Several courts, including our predecessor court, have applied the Lear balancing test to trademarks as well as patents, recognizing the public interest in ensuring trademark validity. See Idaho Potato Comm'n v. M & M Produce Farm & Sales, 335 F.3d 130, 136 (2d Cir. 2003) ("Even when courts have not expressly applied the Lear test [to trademark actions], they have recognized that agreements related to intellectual property necessarily involve the public interest and have enforced such agreements only to the extent that enforcement does not result in a public injury."); MWS Wire Indus., Inc. v. Cal. Fine Wire Co., 797 F.2d 799, 803 (9th Cir. 1986); Wells Cargo, Inc. v. Wells Cargo, Inc., 606 F.2d 961, 965 (CCPA 1979); Beer Nuts, Inc. v. King Nut Co., 477 F.2d 326, 329 (6th Cir. 1973). We have in particular recognized that the public policy in favor of allowing challenges to invalid marks weighs in favor of cabining the doctrine of res judicata at the Patent and Trademark Office. See Mayer/Berkshire Corp. v. Berkshire Fashions, Inc., 424 F.3d 1229, 1234 (Fed. Cir. 2005) ("Caution is warranted in the application of preclusion by the PTO, for the purposes of administrative trademark procedures include protecting both the consuming public and the purveyors."). This interest further supports our conclusion that challenges to the validity of a trademark

registration should not be treated as compulsory counterclaims to trademark infringement actions.

III

We turn then to the second basis for applying claim preclusion against defendants—where the effect of the later action is to collaterally attack the judgment of the first action. Here, the order entered by the district court in the infringement action enjoined Nasalok from selling or importing into the United States any self-locking fastener with a blue (or similarly colored) nylon locking element, and from promoting or advertising the color blue in connection with its self-locking fasteners. Allowing Nasalok to challenge the validity of the '840 Registration, which grants Nylok rights in the use of "a patch of the color blue on a selected number of threads of an externally threaded fastener," would effectively undo the relief granted by the district court in the infringement action.

Section 18(2) of the Restatement (Second) of Judgments makes clear that a defense that could have been interposed cannot later be used to attack the judgment of the first action. When a former defendant attempts to undermine a previous judgment by asserting in a subsequent action a claim or defense that was or could have been asserted in the earlier case, the rules of defendant preclusion will apply. See also id. § 22(2)(b) (defendant who fails to assert counterclaim in the first action may not later maintain an action on that claim if "successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action"). "The clearest need for these rules is shown by cases that have involved a variety of direct attacks on the original judgment based on defenses or claims that could have been

advanced in the first action."  Wright, Miller & Cooper § 4414; see also 18 James Wm.

Moore et al., Moore's Federal Practice § 131.02(2) (3d ed. 1999) ("A collateral attack on

a judgment or order will fail if the party making the attack could have raised the issue in

the other action.").  We have recognized that the doctrine of claim preclusion bars a

collateral attack on an earlier judgment.  See Faust v. United States, 101 F.3d 675, 678

(Fed. Cir. 1996).  Specifically, as noted earlier, in the patent context we have held that a

defendant to an infringement suit that results in a judgment of infringement is "precluded

from challenging validity in a suit for infringement of any device that is the same as the

[alleged infringing device in the first suit], because invalidity was a defense that was or

could have been raised in the prior litigation."  Hallco, 256 F.3d at 1297; see also

Ecolab, 285 F.3d at 1377; Foster, 947 F.2d at 480.  In other words, preclusion is

necessary to protect the effect of the earlier judgment.

In this case, allowing Nasalok to proceed on its cancellation petition would

undoubtedly impair Nylok's rights as established in the infringement action, in particular

its rights under the injunction, and would constitute a collateral attack on the district

court's judgment.  In its petition to cancel the '840 Registration, Nasalok alleged that it

was likely to be damaged by Nylok's continued use of "the design registered as a

trademark by" Nylok, because it "for some time has been involved in the manufacture

and sale of fasteners and screws which are of a related nature to [Nylok's] goods," and

for which it had "a valid and legal right use of the [registered] design."  J.A. at 128-29.

In addition, the cancellation petition specifically stated that Nasalok had been damaged

by the '840 Registration "because [Nylok] ha[d] relied on its ownership of said

registration in another proceeding between the parties," referring to the infringement suit. Id. at 129.

Nasalok correctly points out that the district court judgment in that suit was based on a determination that Nasalok had infringed "one or more" of the seven federally registered trademarks at issue in the suit, without specifying that Nasalok had infringed the '840 Registration, the only mark challenged by Nasalok's petition to cancel. Nonetheless, the injunction ordered Nasalok to cease use of the color blue on "<u>any</u> self-locking fastener." J.A. at 136 (emphasis added). The cancellation of the '840 Registration would require modification of the injunction to permit the use of the color blue on "externally threaded fastener[s], with the blue patch extending more than 90 degrees and less than 360 degrees around the circumference of the fastener," '840 Registration, since the other six trademarks in question would not cover such a use.[7] There is no question that success in the cancellation proceeding would negate relief secured by Nylok in the infringement proceeding.

Nasalok also argues that preclusion should not apply because the injunction resulted from a default judgment. We disagree. It is well established that "[a] default judgment can operate as res judicata in appropriate circumstances." <u>Sharp</u>, 448 F.3d at 1371; <u>see also</u> <u>Morris v. Jones</u>, 329 U.S. 545, 550-51 (1947); <u>Riehle v. Margolies</u>, 279

---

[7]    <u>See</u> Registration No. 2,463,033 ("a strip of the color blue extending perpendicular to . . . threads of an externally threaded fastener"); Registration No. 2,463,031 ("a patch of the color blue on . . . an internally threaded fastener . . . extending less than 160 degrees around the circumference"); Registration No. 2,398,842 ("a patch of the color blue on . . . an externally threaded fastener . . . extending 360 degrees around the circumference"); Registration No. 2,398,841 ("a patch of the color blue on . . . an internally threaded fastener . . . extending more than 160 degrees around the circumference"); Registration No. 2,398,839 ("a pellet of the color blue on . . . an externally threaded fastener").

U.S. 218, 225 (1929); Int'l Nutrition Co. v. Horphag Research, Ltd., 220 F.3d 1325, 1328 (Fed. Cir. 2000) ("Contrary to INC's argument, default judgments can give rise to res judicata."). One of those circumstances exists where, as here, the default judgment satisfied due process requirements,[8] and the defendant in the original action attempts to collaterally attack the default judgment. Such a collateral attack is barred by claim preclusion.[9]

## CONCLUSION

Because Nasalok's claim of trademark invalidity, in its petition to cancel the '840 Registration, amounted to a collateral attack on the district court's judgment in the earlier infringement suit, the rules of defendant preclusion are properly applied to bar Nasalok from asserting that claim. Therefore we affirm the Board's grant of summary judgment in favor of Nylok.

## AFFIRMED

## COSTS

No costs.

---

[8]   Pactiv Corp. v. Dow Chem. Co., 449 F.3d 1227, 1233 (Fed. Cir. 2006) (explaining that a "prior judgment [must] be denied preclusive effect when there has been a due process violation").

[9]   A different rule applies when issue preclusion, rather than claim preclusion, is asserted. See Lee ex rel. Lee v. United States, 124 F.3d 1291, 1296 (Fed. Cir. 1997) (explaining that issue preclusion requires that the issues actually have been litigated, and that the issues underlying a default judgment are not actually litigated); see also Restatement (Second) Judgments § 27, cmt. (e). As noted earlier, the parties do not dispute that issue preclusion does not apply, and the Board's summary judgment decision rested on claim preclusion rather than issue preclusion.

# United States Court of Appeals for the Federal Circuit

2007-1432
(Cancellation No. 92/045,050)

NASALOK COATING CORPORATION,

Appellant,

v.

NYLOK CORPORATION,

Appellee.

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board.

NEWMAN, <u>Circuit Judge</u>, concurring in the judgment.


I too would affirm the judgment of the Trademark Trial and Appeal Board, but I would do so on the grounds applied by the Board; that is, that Nasalok's claim for cancellation is precluded by the judgment against Nasalok in the United States District Court for the Northern District of Illinois.

The panel majority states that trademark invalidity is not a compulsory counterclaim in a trademark infringement action, and thus that Nasalok's claim for invalidity in the cancellation proceeding is not precluded by Nasalok's failure to assert invalidity in the prior infringement case. Respectfully, that question is irrelevant in this case, for validity of the mark was indeed before the district court in the infringement action. It is noteworthy that the issue of a separate test for defendant preclusion, and the attendant question of whether

trademark invalidity is a compulsory or permissive counterclaim in an infringement action, was not raised on this appeal, was not mentioned by the Trademark Trial and Appeal Board, and was never briefed by either party as a ground for decision below or on this appeal. Indeed the parties agreed throughout the case that the proper test for claim preclusion is that stated and applied by the TTAB. My colleagues' elaborate analysis of compulsory counterclaims is irrelevant, for as the TTAB recognized the cancellation proceeding raises the same grounds of invalidity that were before the district court.

The issue of validity was decided in the district court, as shown in the district court's ruling that the trademark "is valid and enforceable." Whether validity was rebutted with evidence, or admitted by default, is of no consequence, for the requirement that an issue was "actually litigated" applies only to issue preclusion, not claim preclusion. Maj. op. at 5 n.2. The premises of a valid and enforceable trademark, such as its distinctiveness and continuous use, were pleaded by the plaintiff, and Nasalok, a party to the action, did not dispute any of the pleadings. Failure to object to a critical issue in the district court does not preserve that issue for relitigation in the TTAB; to the contrary, it closes the issue.

Neither Nasalok nor any of the three other defendants appealed any aspect of the district court's decision. Whether or not validity would have been a compulsory counterclaim if validity were not otherwise before the district court does not authorize the defendant to raise, in a different action, an issue that was decided against it in the earlier action and from which no appeal was taken. The extensive discussion of compulsory counterclaims has no relevance to this appeal, for the validity aspects that might have been contested by counterclaim were presented as a premise of the complaint. Although there may be circumstances in which a PTO proceeding may be brought while parties are in litigation, precedent does not support a broad authorization to relitigate in the PTO issues

that were finally decided in the district court as between the same parties. As the TTAB observed, validity was decided and was not appealed. The generalizations expounded by my colleagues are inapt.

Other aspects of Part II of the court's opinion are also of concern. For example, the panel majority expounds on public policy as justifying applying to trademarks certain policy aspects of the patent case on licensee estoppel, Lear, Inc. v. Adkins, 395 U.S. 653 (1969). Patent public policy and trademark public policy are not the same. The purpose of trademark law is not the advancement of science and technology, and the purpose of patent law is not to protect reputation and guard against consumer confusion. To state, even in dictum, that Lear favors a trademark system that facilitates attacks on trademark property ignores the differing public purposes of patents and trademarks, as well as misperceives the policy principles of Lear. Further, no aspect comparable to Lear is at issue in this case; the court's discussion is inappropriate dictum. I also observe the misperception of the patent ruling in Foster v. Hallco Manufacturing Co., 947 F.2d 469 (Fed. Cir. 1991), which did not confront the compulsory counterclaim question, and which rejected the notion that the policy concerns of Lear alter the basic applicability of claim preclusion in patent cases. Id. at 477.

In sum, I do not concur in Part II.

In Part III the panel majority holds that because Nasalok's cancellation petition, if granted in the PTO, would collaterally attack and (according to my colleagues' dictum) require vacatur of the district court's judgment of infringement, the petition should be dismissed. I agree that the petition should be dismissed, but on the ground selected by the TTAB, that is, by application of basic claim preclusion doctrine. Although precedent illustrates situations in which various actions have been taken in the Patent and Trademark

Office concerning marks in litigation, Nasalok is incorrect in its position that there is an absolute right to bring a cancellation proceeding in the TTAB after having lost on the same grounds in the district court, or after having defaulted and declined to defend in the district court. Here, where Nasalok was a party to the district court proceeding and had full opportunity to raise the same grounds it raises in the cancellation proceeding, the TTAB correctly designated these aspects as res judicata: the parties are the same, the issues are the same, the transactional facts are the same, there was a final judgment of validity, and there was opportunity for appeal. See <u>Parklane Hosiery Co. v. Shore</u>, 439 U.S. 322, 326 n.5 (1979); <u>Lawlor v. Nat'l Screen Serv. Corp.</u>, 349 U.S. 322, 326 (1955).

I would affirm the TTAB decision on the ground of res judicata.