# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 47484

GEM STATE ROOFING,
INCORPORATED,

    Plaintiff-Appellant-
    Cross Respondent,

v.

UNITED COMPONENTS,
INCORPORATED,
dba GEM STATE ROOFING,

    Defendant-Respondent-
    Cross Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Boise, December 2020 Term**

**Opinion Filed: June 7, 2021**

**Melanie Gagnepain, Clerk**

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Samuel A. Hoagland, District Judge.

The decision of the district court is <u>reversed in part</u> and <u>affirmed in part</u>. The judgment is <u>vacated</u> and the case <u>remanded</u>.

McFarland Ritter PLLC, Meridian, for appellant Gem State Roofing. Ryan T. McFarland argued.

Pickens Law, P.A., Boise, for respondent, United Components Incorporated, dba Gem State Roofing. Terri Pickens Manweiler argued.

———————————

STEGNER, Justice.

This is an appeal from a judgment entered after a bench trial. Beginning in the 1980s and 1990s, two Idaho businesses did roofing work under substantially similar names. One, Gem State Roofing, Inc., performed work primarily in Blaine County. It will be referred to as Gem State-Blaine. The other was a corporation operating under the name Gem State Roofing and Asphalt Maintenance, which also did business as Gem State Roofing. The latter was based in Boise, Idaho, and performed work in a significantly larger area. In 2011, Gem State Roofing and Asphalt Maintenance was succeeded in interest by United Components, Inc. (This corporation will be referred to as UCI.) Notwithstanding its change of name, it continued to do business as Gem State Roofing.

1

In 2005, prior to UCI's name change, the two businesses with similar names entered into a Trademark Settlement Agreement (TSA). The agreement contained terms prohibiting UCI from advertising, soliciting, or performing business in Blaine County, with exceptions for warranty or maintenance work, work performed for previous customers, or public entity work obtained by bid. In addition, UCI agreed that if it received a request for work it was contractually unable to fulfil because of the TSA, it would refer the work to Gem State-Blaine.

In 2018, Gem State-Blaine filed a lawsuit against UCI, alleging that it had breached the TSA when it advertised, solicited, bid on, and performed roofing work in Blaine County, and had failed to refer requests for work as required under the TSA. Gem State-Blaine brought claims for (1) breach of contract, (2) breach of the covenant of good faith and fair dealing implied in the TSA, (3) trademark infringement of a common-law trademark under 15 U.S.C. section 1125, (4) unjust enrichment, (5) a preliminary injunction, and (6) a permanent injunction. Gem State-Blaine also requested money damages, attorney fees, and costs.

After discovery and cross-motions for summary judgment, a bench trial was conducted on the remaining issues and claims. Ultimately, the district court concluded that, despite UCI's breach of the TSA and the implied covenant of good faith and fair dealing, Gem State-Blaine had failed to prove damages or that it was entitled to a permanent injunction. The district court further found that Gem State-Blaine had no protectable common-law trademark. Finally, the district court concluded that there was no prevailing party and declined to award attorney fees and costs. Gem State-Blaine timely appealed. UCI timely cross-appealed the district court's denial of its request for attorney fees and costs.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background.

In the early 1980s, Jeffrey Flynn (Flynn) started a roofing company in Nampa, Idaho, and named it "Gem State Roofing." In 1987, he moved to Boise and continued his business, but also began to offer asphalt maintenance. In 1995, Flynn and his then-wife Michelle Flynn (Michelle) incorporated Flynn, Inc., by filing Articles of Incorporation with the Idaho Secretary of State.[1] Flynn and Michelle served as directors of the corporation.

---

[1] In 2011, Gem State Roofing and Asphalt Maintenance, Inc., was succeeded in interest by United Components, Inc., but continued to do business as "Gem State Roofing." As previously noted, it will be referred to as UCI; however, to avoid confusion, it will also be referred to as Gem State-Boise when describing events which occurred *before* UCI was created in 2011.

Two years later, in 1997, Rick Silvia (Silvia) filed a Certificate of Assumed Business Name with the Idaho Secretary of State, indicating he was doing business under the name "Gem State Roofing." Silvia had been performing roofing work in Blaine County since approximately 1991, but it was not until 1997 that he began calling his business "Gem State Roofing."

In 1998, Flynn filed Articles of Amendment to change the name of his corporation—Flynn, Inc.—to "Gem State Roofing and Asphalt Maintenance, Inc." (Gem State-Boise). In 1999, acting as secretary for the corporation, Michelle filed a Certificate of Assumed Business Name with the Idaho Secretary of State claiming the name "Gem State Roofing."

In 2000, Silvia filed Articles of Incorporation registering Gem State Roofing, Inc. ("Gem State-Blaine") with the Idaho Secretary of State. Two years later, in 2002, the State of Idaho issued a Certificate of Registration Trademark Service Mark for "Gem State Roofing" to Gem State-Blaine, stating that its first use had been in November 1997, and set the expiration of the trademark for May 2012.[2]

In 2004, the State of Idaho issued a Certificate of Registration Trademark Service Mark to Gem State-Boise, stating that the mark's first use had been in 1985, and set the expiration date in December 2014.[3] The trademark was renewed in 2014.

Sometime in the years before 2005, Silvia and Flynn realized that their roofing companies were performing similar services under the same name.[4] The two companies entered into the TSA to address these concerns "by agreeing not to do business or advertise in the other's primary market." In particular, the companies agreed that their names were confusingly similar and that they provided similar services. As part of the TSA, Flynn and Silvia agreed they would not advertise or solicit business in each other's primary market. Several exceptions applied, permitting warranty and maintenance work or repeat customer business, as well as work for public entities that was acquired by a qualified bid. The TSA was signed by Silvia and Michelle Flynn as presidents of Gem State-Blaine and Gem State-Boise, respectively.

Throughout 2010, Flynn and Michelle's marriage deteriorated, eventually leading to their divorce. At the same time, Gem State-Boise had incurred significant income tax liability. Flynn testified that in order to resolve the tax liability, the IRS directed him to dissolve Gem State-Boise

---

[2] This trademark was never renewed.
[3] The trademark was then assigned to UCI in 2014 before the trademark's renewal.
[4] Silvia testified that he first became aware that UCI's predecessor was doing work in Blaine County in 2002.

and start a new company with a new name. In 2011, Flynn filed Articles of Incorporation with the Idaho Secretary of State creating United Components, Incorporated. UCI continued to operate using its predecessor's business equipment and did not inform its clients of the change.

In 2012, the predecessor corporation was administratively dissolved. Michelle Flynn had no ownership interest in UCI.

Beginning in 2010, UCI bid on and performed roofing services for projects in Blaine County. Most significantly, in 2018, UCI bid on and received a subcontract with McAlvain Construction to perform over $200,000 in roofing work on the Wood River Animal Shelter in Hailey, Idaho. As of October 2018, UCI had been paid a total of $279,540 on that project alone.

### B. Procedural History.

On July 20, 2018, Gem State-Blaine filed suit against UCI in Ada County. Gem State-Blaine brought claims for (1) breach of contract, (2) breach of the covenant of good faith and fair dealing implied in the TSA, (3) trademark infringement of a common-law trademark under 15 U.S.C. section 1125, (4) unjust enrichment, (5) a preliminary injunction, and (6) a permanent injunction. Gem State-Blaine also requested money damages, as well as attorney fees and costs under Idaho Code section 12-121 and the terms of the TSA.

UCI filed its answer. Among the affirmative defenses asserted, UCI contended that because UCI was not a party to the TSA, it could not have breached it. Further, UCI alleged that Gem State-Blaine's trademark could not have been infringed because it expired in 2012.

Discovery in this case was particularly contentious and is at the heart of several issues raised on appeal. It also overlapped with the parties' cross-motions for summary judgment. To avoid confusion, the events relating to discovery will be explained separately from the events relating to summary judgment.

### 1. Gem State-Blaine's initial motion to compel.

In September 2018, discovery commenced when Gem State-Blaine delivered several written discovery requests to UCI. In response to the request for copies of any correspondence or communication between UCI and potential or actual customers in Blaine County, UCI produced 117 pages of documents in October and November 2018.

In November and December 2018, Gem State-Blaine served eleven third-party subpoenas duces tecum upon several of UCI's potential and existing customers in Blaine County, requesting

4

that they produce any correspondence with UCI. In response, the third parties produced hundreds of pages of documents, including emails and contracts that had not been produced by UCI.

Gem State-Blaine filed a motion to compel on January 28, 2019, arguing that the third parties' responses indicated that UCI had not fully produced its communications with Blaine County customers in its response to discovery. Gem State-Blaine requested attorney fees and costs associated with the additional subpoenas, as well as sanctions for UCI's lack of responsiveness.

In early March, UCI produced its third supplemental response to Gem State-Blaine's first discovery requests, which consisted of more than a thousand pages of documents. Gem State-Blaine stated in a later hearing that "virtually all of [these electronic communications] related to the large contract in the case, the [McAlvain]/Wood River Animal Shelter contract."

A hearing on Gem-State Blaine's motion to compel was held on March 19, 2019. The thrust of Gem State-Blaine's argument was that UCI had withheld requested discovery, while UCI countered that the email correspondence Gem State-Blaine requested had been routinely deleted and so it could not be produced. Following argument, the district court granted Gem State-Blaine's motion to compel and ordered "the defense to fully and faithfully respond to any and all discovery requests." However, the district court deferred its ruling on Gem State-Blaine's request for sanctions. An order to this effect was entered on March 25, 2019, and re-entered as amended on April 3, 2019.

2. Cross-motions for summary judgment.

On February 6, 2019, Gem State-Blaine moved for partial summary judgment. On February 13, 2019, UCI filed its cross-motion for summary judgment. UCI argued that there was no genuine issue of material fact that it was not a party to the TSA, and therefore it could not have breached the TSA or violated the covenant of good faith and fair dealing. Further, UCI argued there was no genuine issue of material fact as to whether Gem State-Blaine had a protectable trademark because the trademark registration had expired in 2012. Finally, UCI argued that there was no genuine issue of material fact as to Gem State-Blaine's claim of unjust enrichment, and that Gem State-Blaine did not meet any of the requirements for a preliminary or permanent injunction.

Following a hearing, the district court entered its memorandum decision and order, granting in part the parties' cross-motions for summary judgment. The district court first concluded that the TSA was enforceable against UCI because UCI was Gem State-Boise's successor in interest. The district court further ruled that there was no genuine issue of material fact that UCI

had breached the TSA by performing work in Blaine County that was not warranty, maintenance, or work for returning customers; and further that UCI had not referred work it was contractually obligated to refer to Gem State-Blaine. The district court also concluded that UCI had breached the covenant of good faith and fair dealing. On these issues, the district court granted Gem State-Blaine's motion for partial summary judgment.

The district court also denied summary judgment on several issues raised by UCI. In particular, the district court held that under 15 U.S.C. section 1127, Gem State-Blaine's trademark did not need to be actively registered for a valid and enforceable trademark to exist. Because there was a genuine issue of material fact concerning whether Gem State-Blaine had a protectable common-law trademark, the district court denied UCI summary judgment on this issue. The district court also ruled that there was a genuine issue of material fact as to whether Gem State-Blaine was entitled to an injunction.

Finally, the district court granted UCI's motion for summary judgment as to Gem State-Blaine's claim for unjust enrichment, ruling that the doctrine of unjust enrichment did not apply under the facts of this case.

3. Gem State-Blaine's motion for sanctions; UCI moves for reconsideration and for a protective order, which is granted.

After the district court's April 3, 2019, order compelling UCI to fully respond to Gem State-Blaine's discovery requests, UCI served its fourth supplemental responses on April 17, 2019. No new documents were produced in response to Gem State-Blaine's requests; UCI continued to assert that it did not maintain or keep the electronic communications that Gem State-Blaine had received via subpoena from third parties, and that any deleted emails could not be recovered or produced.

On May 30, 2019, Gem State-Blaine moved for sanctions under Idaho Rule of Civil Procedure (IRCP) 37(b). Gem State-Blaine argued that UCI had not made a good faith effort to produce all requested communication and had therefore failed to comply with the court's April 3, 2019, order compelling UCI to respond. As a proposed sanction, Gem State-Blaine requested that the court prohibit UCI from producing evidence on the issue of damages at trial, and to instruct the jury "to take it as established that, but for UCI's . . . violation of the [TSA], Gem State-Blaine would have obtained the Blaine County jobs that UCI . . . obtained." Gem State-Blaine also sought an award of costs and attorney fees incurred on discovery, third-party discovery, and discovery motions.

6

UCI responded, arguing that it had fully complied with the order compelling it to respond, and contended that the relief requested did not make sense because the case would not be tried by a jury. UCI stated that it was "at a loss as to how to convince [Gem State-Blaine] that it is not hiding documents or refusing to produce documents[.]"

A hearing was held on June 19, 2019. After argument, the district court granted Gem State-Blaine's motion for sanctions in part, and ordered UCI to produce its computers, electronic devices, and access to email accounts to a third party so that Gem State-Blaine could conduct its own digital search. However, the district court again did not order UCI to pay for Gem State-Blaine's digital search, stating that the decision to impose fees and costs was very "fact dependent" and there was insufficient evidence that UCI had not been acting in good faith. While the district court prohibited UCI from offering any emails or electronic communications that had not yet been produced, it stated that it was unprepared "to enter an order that there's an inference that [Gem State-Blaine] would have obtained these jobs . . . that just depends upon the individual facts and circumstances[.]"

UCI moved for reconsideration and requested that the court enter a protective order. UCI argued that the electronic search ordered by the district court was likely to reveal attorney-client communications, which would violate the rules governing professional conduct, civil procedure, and evidence. UCI requested a protective order allowing UCI sufficient notice and access to preserve attorney-client privilege, or alternatively to appoint a special master to ensure that any privileged communication subject to the search remained privileged.

After conducting another hearing, the district court granted UCI's motion for reconsideration and entered a protective order as requested by UCI. Ultimately, no responsive emails were uncovered. In response to the third-party subpoenas served by Gem State-Blaine, the email providers of AOL and Gmail refused to produce any additional emails.

4. A bench trial is conducted.

The parties filed a stipulation regarding undisputed facts on July 19, 2019, and the case proceeded to a bench trial on August 5, 2019. With several key issues already decided at summary judgment, the single-day trial focused on the remaining issues: (1) whether a permanent injunction was an appropriate remedy; (2) whether Gem State-Blaine had been damaged by the breach and if so, in what amount; (3) whether Gem State-Blaine had a protectable common-law trademark, and if so, whether Gem State-Blaine had sustained damages.

7

Gem State-Blaine presented Silvia as its only witness before resting its case. UCI moved for a directed verdict, arguing that Silvia's testimony had been insufficient to establish any basis for relief. The district court denied this motion. UCI offered three witnesses: a project manager for McAlvain Construction, UCI's corporate secretary, and Jeffrey Flynn.

After trial concluded, the district court entered its findings of facts and conclusions of law on September 17, 2019. The district court determined that, despite UCI's breach of the TSA and the covenant of good faith and fair dealing, Gem State-Blaine had not proved any resulting damages. As part of this analysis, the district court also concluded that an injunction was inappropriate because Gem State-Blaine was not actually threatened by irreparable injury as a result of the breach. Finally, the district court held that Gem State-Blaine had not established that it had a protectable common-law trademark in the name of "Gem State Roofing." The district court also concluded that neither party had prevailed and declined to award attorney fees or costs.

5. UCI seeks reconsideration of its request for costs and attorney fees. Gem State-Blaine seeks attorney fees for UCI's discovery violations.

After trial, both parties asked the court for an award of costs and attorney fees. On September 19, 2019, UCI sought all its costs and attorney fees under Idaho Code section 12-120(3). UCI first reasoned that it was, in fact, the prevailing party, as Gem State-Blaine had failed to establish damages. UCI alternatively argued that, because it had submitted a formal Offer of Judgment before trial, it should be entitled to recover all its attorney fees and costs incurred from July 10, 2019, pursuant to Idaho Rule of Civil Procedure 68.

On September 24, 2019, Gem State-Blaine filed its memorandum of costs and attorney fees associated with the discovery violations it had previously alleged. Gem State-Blaine argued that IRCP 37(a)(5) required an award of costs and fees after Gem State-Blaine's motion to compel was necessitated by UCI's failure to disclose various documents. Gem State-Blaine further argued that under Rule 37(b)(2)(C), UCI was required to pay attorney fees and costs because it had not complied with the original order to compel. Gem State-Blaine finally argued that under Rule 37(c)(2), attorney fees and costs were warranted because Gem State-Blaine had proved the truth of admissions UCI refused to admit.

On November 12, 2019, a hearing was held. On December 13, 2019, the court denied both parties' motions for costs and attorney fees. The court again held that neither party had prevailed, citing *Trilogy Network Systems v. Johnson*, 144 Idaho 844, 172 P.3d 1119 (2007). The court further concluded that IRCP 68 did not entitle UCI to attorney fees and costs, reasoning that the rule's

8

reference to Rule 54(d)(1) included the requirement that the party seeking costs under Rule 68 be the *prevailing* party.

Turning to Gem State-Blaine's request for discovery sanctions, the district court concluded that UCI's objections and failure to produce the documents that Gem State-Blaine sought "were substantially justified" and that there was no evidence that UCI engaged in foul play or hid any relevant communications. Further, the district court concluded that UCI was justified in its dispute of several requests for admissions relating to its liability under the TSA, because UCI's status as a successor in liability was not law of the case until the court's decision on summary judgment. Accordingly, the district court declined to award attorney fees and costs to either party.

Gem State-Blaine filed its notice of appeal on October 7, 2019, followed by an amended notice of appeal on December 17, 2019. UCI filed its Notice of Cross-Appeal on December 24, 2019.

## II.    STANDARD OF REVIEW

"The granting or refusal of an injunction is a matter resting largely in the trial court's discretion." *Conley v. Whittlesey*, 133 Idaho 265, 273, 985 P.2d 1127, 1135 (1999) (quotation omitted). This Court reviews a discretionary decision for "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018) (citation omitted).

> On appeal, "[w]hen findings of fact are challenged, the appellant has the burden of showing error, and the reviewing court will review the evidence in a light most favorable to the respondent." *Higginson v. Westergard*, 100 Idaho 687, 689, 604 P.2d 51, 53 (1979). The Court will not disturb the district court's finding of fact unless the finding is clearly erroneous. *PacifiCorp v. Idaho State Tax Comm'n*, 153 Idaho 759, 767, 291 P.3d 442, 450 (2012). A finding is clearly erroneous if [it] is not supported by substantial and competent evidence. *Id.* "Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion." *Jarvis v. Rexburg Nursing Ctr.*, 136 Idaho 579, 583, 38 P.3d 617, 621 (2001).

*Nw. Farm Credit Servs., FLCA v. Lake Cascade Airpark, LLC*, 156 Idaho 758, 763, 331 P.3d 500, 505 (2014).

"The findings of the trial court on the question of damages will not be set aside when based on substantial and competent evidence." *Trilogy Network Sys.*, 144 Idaho at 846, 172 P.3d at 1121.

9

## III. ANALYSIS

### A. UCI's failures to produce requested documents were not substantially justified, and the district court's ultimate ruling denying sanctions is therefore vacated and remanded.

At several junctures, the district court deferred ruling on or denied Gem State-Blaine's requests for discovery sanctions. Ultimately, the district court denied monetary sanctions on each basis Gem State-Blaine advanced.

Gem State-Blaine first requested attorney fees and costs under IRCP 37(a)(5) and IRCP 37(c)(2) when it filed its motion to compel in January 2019. Despite granting the motion to compel, the district court ruled from the bench that it would defer ruling until the matter was fully concluded:

> [A]s I mentioned earlier, if the defense essentially continues in its position at this point that there's nothing more to produce or provide, and if the plaintiffs somehow are able to prove that it's being withheld, then I'm interested not only in awarding fees, costs, sanctions, etcetera [sic] at that point in time, but maybe other sanctions which could include prohibiting the party from presenting evidence or striking claims or pleadings . . . . But I'm not going to do that at this point in time. I'm just going to enter the order and assuming that everything that could and should have been produced has already been produced, if the plaintiffs find later that there's something that was not produced, then I guess we'll take up the rest of it at that point in time.

Gem State-Blaine then renewed its request for attorney fees and costs under IRCP 37(b) as part of its motion for sanctions in May 2019. The district court again granted the motion for sanctions, but the sanctions imposed required UCI to make available its electronic devices and account information for a third-party digital search. At the hearing, the district court again deferred ruling on whether it would award fees and costs. Three weeks later, the district court granted UCI's motion for reconsideration regarding the order granting sanctions and entered a protective order to maintain privileged information.

At the close of the trial, Gem State-Blaine sought attorney fees and costs in connection with its various motions to compel and for sanctions. However, the district court disallowed attorney fees and costs, concluding that UCI's objections and failure to produce documents was justified, and that Gem State-Blaine had not uncovered any additional documents. The district court also held that UCI had disputed its liability under the TSA in good faith such that its denial of facts later proved at trial was also justified.

10

On appeal, Gem State-Blaine continues to argue that the district court was required by IRCP 37(a)(5), IRCP 37(b)(2)(C), and IRCP 37(c)(2) to award attorney fees and costs as a sanction for UCI's breach of discovery rules. We begin with the admonition that discovery should not be a game played by lawyers. Violations of discovery rules must be dealt with as they arise and as they are acknowledged by the trial court. If they are not, the party unreasonably avoiding legitimate discovery will be rewarded for its intransigence, to the detriment of the innocent party. It is also conceivable that a party could unreasonably resist discovery and be subject to appropriate sanctions, but ultimately prevail on the merits of the case. Prevailing on the merits should not somehow exonerate a party from employing unfair tactics as the litigation proceeds. Thus, we conclude it was error for the district court to defer imposing sanctions against UCI when confronted with its discovery abuses.

The standard of review for decisions to impose sanctions associated with discovery violations is characterized as "discretionary." *State Ins. Fund v. Jarolimek*, 139 Idaho 137, 138–39, 75 P.3d 191, 192–93 (2003). In addition, when we review a district court's imposition of sanctions, we must decide if substantial and competent evidence supports the district court's determination that a discovery violation has occurred, and then review the sanction itself for an abuse of discretion. *Easterling v. Kendall*, 159 Idaho 902, 909, 367 P.3d 1214, 1221 (2016).[5] It is therefore axiomatic that when a trial court has not followed the applicable law or rule, it has abused its discretion.

      1.   <u>UCI's nondisclosures related to the initial motion to compel were not substantially justified under Rule 37(a)(5).</u>

In its initial requests for production, Gem State-Blaine requested that UCI produce "any and all documents that support or relate" to roofing work "bid on, solicited, or performed" in Blaine County. UCI only disclosed 117 pages of documents in its initial response to Gem State-Blaine's request for production; it was only after Gem State-Blaine's motion to compel that UCI provided the bulk of the electronic communication regarding ongoing work that had initially been withheld.

In its decision denying sanctions, the district court concluded:

UCI's objections and failure to produce documents were substantially justified and other circumstances make an award of expenses unjust. In viewing the litigation

---

[5] The federal equivalent to IRCP 37 has been interpreted to give rise to a similar standard of review, considering the federal abuse of discretion standard. *See, e.g.*, *Marchand v. Mercy Med. Ctr.*, 22 F.3d 933, 936 (9th Cir. 1994) ("A district court abuses its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact.").

11

as a whole, UCI consistently maintained it had nothing more to produce. Gem State[-]Blaine was not able to uncover any additional documents pertinent to its claims. There is no evidence that UCI deleted emails or hid any relevant documents or other evidence of foul play. Instead, Kuhn's [UCI's corporate secretary's] unrebutted testimony was that it was UCI's business practice to delete emails once a job is complete.

On appeal, Gem State-Blaine argues that the district court was required by Idaho Rule of Civil Procedure 37(a)(5) to award attorney fees to Gem State-Blaine because, between the filing of the motion to compel and the motion hearing, UCI produced the bulk of its discovery responses. Gem State-Blaine argues that "[n]one of the stated Rule 37(a)(5) exceptions applied—certainly, the District Court never found that any applied[.]"

UCI responds that the district court's decision to defer ruling on the issue of attorney fees and costs associated with the motion made its decision on the motion to compel, in essence, a partial grant of the motion. UCI argues that because the ruling constituted a partial grant of the motion to compel, Rule 37(a)(5)(C) applied rather than Rule 37(a)(5)(A). Under Rule 37(a)(5)(C), it is left to the district court's discretion whether to award reasonable expenses; in contrast, if IRCP 37(a)(5)(A) applied, an award of reasonable expenses would be mandatory unless the court found that an exception was applicable. UCI contends that the district court properly exercised its discretion in denying reasonable expenses.

Idaho Rule of Civil Procedure 37 governs sanctions for violations of the discovery rules. Rule 37(a)(5) provides that if a motion to compel is granted or if discovery is provided after filing the motion:

> (5) Payment of Expenses; Protective Orders.
>
> (A) If the Motion Is Granted (or Discovery Is Provided After Filing). If the motion is granted, or if the requested discovery is provided after the motion was filed, the court *must*, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
>> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>>
>> (ii) *the opposing party's nondisclosure, response, or objection was substantially justified*; or
>>
>> (iii) other circumstances make an award of expenses unjust.

I.R.C.P. 37(a)(5) (italics added).

The district court's finding that UCI's nondisclosure was substantially justified is clearly erroneous as it relates to Rule 37(a)(5)(A). The district court's decision only addresses UCI's proffered reason for not providing the additional electronic communications concerning *closed* projects. However, the district court did not address UCI's justification for why the bulk of its discovery regarding the Wood River Valley Animal Shelter—an *ongoing* project and certainly the largest project by dollar volume—was not provided until after Gem State-Blaine filed its motion to compel. To the extent that UCI produced documents only after Gem State-Blaine filed a motion to compel, the district court erred in finding that an exception to Rule 37(a)(5)(A) applied. Accordingly, the district court was required by Rule 37(a)(5)(A) to enter an award of Gem State-Blaine's reasonable expenses incurred in filing the motion to compel.

UCI's argument that the district court's decision constituted a *partial* grant of the motion to compel is not persuasive. The district court perceived its order to compel as a grant of Gem State-Blaine's motion. The district court did not qualify its decision and did not justify its refusal to award attorney fees under Rule 37(a)(5)(C). Without substantial justification for UCI's failure to produce discovery under Rule 37(a)(5)(A), more than an order attempting to cure discovery abuses was required; monetary sanctions were mandated in the form of reasonable expenses associated with the motion to compel. The district court clearly erred in denying these expenses.

2. We defer to the district court's credibility determination that UCI was substantially justified in its failure to produce any additional electronic documents after the motion to compel was granted but before the motion for sanctions was filed.

In addition to asserting the applicability of Rule 37(a)(5)(A) Gem State-Blaine argues that because its motion for sanctions was ultimately granted the district court was required to hold UCI responsible for attorney fees and costs under IRCP 37(b)(2)(C). UCI argues that the district court made findings that UCI's failure to produce was substantially justified.

Rule 37(b)(2)(C) governs monetary expenses when a motion for sanctions is granted but uses a nearly identical standard to Rule 37(a)(5)(A). Once a motion for sanctions is granted, "the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure [to obey an order to provide or permit discovery], *unless the failure was substantially justified or other circumstances make an award of expenses unjust.*" I.R.C.P. 37(b)(2)(C) (italics added).

While the district court's "substantial justification" finding is clearly erroneous as it applies to Rule 37(a)(5)(A)—as discussed above—we do not conclude the same as it pertains to Rule

13

37(b)(2)(C). This is because the basis for Gem State-Blaine's motion for sanctions was UCI's failure to produce any *additional* electronic communications after UCI's third supplemental discovery response. We defer to the district court's determination of credibility in its conclusion regarding the veracity of UCI's corporate secretary that emails relating to *closed* projects had been routinely deleted. As the trier of fact, the district court was entitled to weigh the evidence and gauge the demeanor of the witnesses. *Wilson v. Mocabee*, 167 Idaho 59, 467 P.3d 423, 432 (2020) (citation omitted). Accordingly, the district court's finding that UCI's failure to produce additional emails was substantially justified is not clearly erroneous.[6]

3. <u>The district court's finding that UCI had "good reason" for its refusal to admit various requests for admission is clearly erroneous. As a consequence, the district court erred in refusing to enter sanctions under Rule 37(c)(2).</u>

In its order regarding attorney fees, the district court rejected Gem State-Blaine's argument that IRCP 37(c)(2) required imposition of sanctions, stating:

> UCI vigorously (and in good faith) disputed its liability under the TSA. It was not until the Court issued its *Memorandum Decision and Order* on April 16, 2019[,] finding that UCI was bound by the TSA that such fact became the law of the case. Likewise, UCI did not admit to various Rule 36 requests for admission based on its contention that it was not bound by the TSA. *The Court finds that UCI had a good reason for its failure to admit based on its defense strategy.*

(Italics added.)

Gem State-Blaine argues that UCI denied three specific requests for admission (RFAs), and that the truth of those requests was proved at trial. Gem State-Blaine contends that the district court had no discretion to reject Gem State-Blaine's request for fees because of UCI's denial of the RFAs. Gem State-Blaine cites *Ruge v. Posey*, 114 Idaho 890, 892, 761 P.2d 1242, 1244 (Ct. App. 1988), for the proposition that an award of reasonable expenses is mandatory unless one of four exceptions apply. In response, UCI argues that it was justified in denying the RFAs. UCI first argues that the phrasing of the RFAs justified its denials. UCI further contends that "despite denials that should have been admitted, or at least partially admitted or clarified in an exercise of good faith, the Court found against awarding costs because the denial did not impact the proof ultimately presented at trial." Gem State-Blaine responds, arguing that UCI's concession is telling and that

---

[6] Left unanswered in the district court's analysis is whether UCI's routine destruction of emails would constitute spoliation of evidence. UCI had entered into a non-compete agreement with Gem State-Blaine, an agreement that UCI clearly breached. While UCI could not produce something that had been destroyed, we are not faced with and do not answer whether a party may routinely destroy documents relating to a breach of an agreement and do so with impunity.

14

the district court's only finding was that UCI's failure to admit was justified because of "its defense strategy."

Idaho Rule of Civil Procedure 37(c)(2) provides:

(2) Failure to Admit. If a party fails to admit what is requested under Rule 36 and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof. The court must so order unless:

(A) the request was held objectionable under Rule 36(a);

(B) the admission sought was of no substantial importance;

(C) the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or

(D) there was other good reason for the failure to admit.

I.R.C.P. 37(c)(2). "The rule is mandatory, subject only to the four exceptions set forth in the rule itself[.]" *Ruge*, 114 Idaho at 892, 761 P.2d at 1244.

Gem State-Blaine was entitled to its reasonable expenses in relation to UCI's denial of RFA Numbers 10, 12, and 17. The RFAs which UCI summarily denied and which Gem State-Blaine considers objectionable are as follows:

REQUEST FOR ADMISSION NO. 10: Admit that You are doing business under the assumed business name "Gem State Roofing."
. . . .
REQUEST FOR ADMISSION NO. 12: Admit that since 2016, You have advertised, solicited, bid on, *and* performed roofing work in Blaine County under the assumed business name "Gem State Roofing."
. . . .
REQUEST FOR ADMISSION NO. 17: Admit that despite Gem State's written demands that You cease conducting Your roofing business in Blaine County, You continue to advertise, solicit, bid on, *and* perform roofing work in Blaine County.

(Italics added).

UCI argues that the phrasing of RFA Nos. 12 and 17 justified its summary denial because it was not advertising or soliciting business in Blaine County. UCI reasons that these two RFAs use the conjunctive "and"—meaning that if any one of the verbs "advertise, solicit, bid on," or "perform[,]" were not true, it would not be entirely true to admit. These semantic justifications are not countenanced by Rule 36(a)(5), which governs answers to requests for admission:

If a matter is not admitted, *the answer must* specifically deny it or *state in detail why the answering party cannot truthfully admit or deny it*. A denial must fairly respond to the substance of the matter; and when good faith requires that a party

15

qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.

I.R.C.P. 36(a)(5) (italics added). The rule requires a fair response to the substance of the request for admission, specifically including *why* the answering party cannot truthfully admit or deny the specific request. UCI's answer did not specify which parts of RFAs 12 and 17 were being denied and which were being admitted.[7] Failure to follow a rule of civil procedure does not constitute, nor can it be justified as, a legitimate "defense strategy."

In addition, the district court's reasoning about "defense strategy" has no application to UCI's denial of RFA Number 10. UCI argues that it "was legally conducting business as UCI, not Gem State, providing a justified basis for denying all of the admissions." The difference between the legal name of a business and the name in which it *does* business, while legally meaningful, is a distinction without a difference under these circumstances. Moreover, there is simply no justification for this denial. There is little indication from the record, from the district court's order on attorney fees, or in UCI's briefing as to how UCI could deny doing business under the name it had been using continuously for years. Accordingly, Gem State-Blaine is entitled to its reasonable expenses (including attorney fees) associated with proving that UCI improperly denied RFA Numbers 10, 12, and 17.

## B. The district court abused its discretion in denying a permanent injunction.

The district court denied Gem State-Blaine's request for a permanent injunction as a remedy for UCI's breach of the TSA. In doing so, the district court concluded that Gem State-Blaine had not "demonstrated that it has suffered irreparable injury by UCI's conduct." The district court pointed to Gem State-Blaine's evidence that for the last 18 years, its profit margins had been increasing. The district court further noted that there was no evidence that the work UCI *wrongfully* undertook in Blaine County would have been obtained by Gem State-Blaine, and Gem State-Blaine failed to prove what profit it would have made had it acquired that work. The district court also noted that there was no evidence that UCI had harmed Gem State-Blaine's reputation by performing shoddy work, or that UCI had recently done work in Blaine County. The district court concluded that without evidence that UCI had "actually threatened" Gem State-Blaine with "irreparable injury[,]" it would not issue a permanent injunction.

---

[7] On appeal UCI acknowledges that it would have been better had it partially admitted and clarified its responses due to the obligation contained in the rule requiring "good faith[.]" In doing so, UCI implicitly concedes it violated the rule.

16

On appeal, Gem State-Blaine argues that it satisfied several requirements of IRCP 65(e) and should have been awarded its requested permanent injunction. Gem State-Blaine contends that the district court abused its discretion by requiring it to provide evidence showing that it would have received the jobs UCI received and performed, or to provide testimony of the customers lost by UCI's wrongful conduct. Gem State-Blaine also challenges the district court's reasoning for seeming to conclude that UCI's injury-causing behavior had resolved itself over time, or for at least relying on the "minimal" and non-recent nature of UCI's breach of the TSA.

In response, UCI argues that IRCP 65(e) only applies to the entry of a preliminary injunction, but that even Gem State-Blaine's speculation that it "may have lost business" was insufficient to satisfy this rule. UCI argues that by the language of Rule 65(e), a preliminary injunction would only apply to ongoing conduct *during* litigation and that Gem State-Blaine could not show that any such conduct was occurring. UCI further asserts that the district court correctly found there had been no injury to Gem State-Blaine as a result of UCI's breach of the TSA, and therefore no irreparable injury. UCI argues that the district court's description of UCI's breach of the TSA as "minimal" was accurate, particularly because without associated damage, there could be no injury. Finally, UCI defends the district court's focus on Gem State-Blaine's profit margins, arguing that the district court was entitled to examine Gem State-Blaine's profit margins in the absence of evidence of profit loss.

"The object of injunctive relief is to prevent injury, threatened and probable to result, unless interrupted." *Miller v. Ririe Joint Sch. Dist. No. 252*, 132 Idaho 385, 388, 973 P.2d 156, 159 (1999) (citation omitted).

> Where the conduct causing injury has been discontinued, the dispute is moot and the injunction should be denied. [*Id.*] However, as the United States Supreme Court observed, the trial court must be convinced that "there is no reasonable expectation that the wrong will be repeated." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, (1953)[.]

*O'Boskey v. First Fed. Sav. & Loan Ass'n of Boise*, 112 Idaho 1002, 1007, 739 P.2d 301, 306 (1987). Further, "injunctive relief looks to the future, and is designed to deter rather than punish[.]" Wright & Miller, *Federal Practice and Procedure: Civil* § 2942 (footnotes omitted).

There is a distinction between the showing of injury required to obtain an injunction and damages required to prove monetary relief. *See Cazier v. Econ. Cash Stores*, 71 Idaho 178, 187, 228 P.2d 436, 441 (1951) (quoting *Bernstein v. Friedman*, 160 P.2d 227, 234 (Wyo. 1945)) ("[T]here is an obvious distinction between injury and damage that is not always observed in

17

dealing with the question of injunctive relief, and courts of equity will interpose in a proper case to protect a right, without any reference to the question of actual damage."). Further, "[w]e have not held that permanent injunctions cannot under any circumstances issue without a finding of irreparable harm." *Jacklin Land Co. v. Blue Dog RV, Inc.*, 151 Idaho 242, 248, 254 P.3d 1238, 1244 (2011) (citing *Cazier*, 71 Idaho at 186–87, 228 P.2d at 441).

As an initial observation, UCI's reliance on the standard for a *preliminary* injunction is inapposite. Rule 65(e) enumerates five grounds for entry of a preliminary injunction. A preliminary injunction is a temporary injunction effective for the pendency of the litigation before the merits of the case are decided. I.R.C.P. 65(e). Preliminary injunctions are designed to protect clearly established rights from imminent or continuous violation during litigation. *See Gordon v. U.S. Bank Nat'l Ass'n*, 166 Idaho 105, 455 P.3d 374, 384 (2019) (quoting *Brady v. City of Homedale*, 130 Idaho 569, 572, 944 P.2d 704, 707 (1997)) ("A district court should grant a preliminary injunction 'only in extreme cases where the right is very clear and it appears that irreparable injury will flow from its refusal.'"). A permanent injunction, on the other hand, is entered at the resolution of the case, and requires a showing of threatened or actual irreparable injury; in addition, in order to deny a permanent injunction the trial court must be persuaded that there is "no reasonable expectation that the wrong will be repeated." *O'Boskey*, 112 Idaho at 1007, 739 P.2d at 306. In other words, a trial court may appropriately deny a preliminary injunction at the outset of a case when there are complex issues of fact and law yet to resolve, but correctly grant a permanent injunction once those issues have been resolved in favor of the plaintiff. The two types of injunction serve different purposes and the distinction between the two and the different tests to be applied to them should not be conflated.

The district court abused its discretion in denying Gem State-Blaine a permanent injunction for three reasons. First, the district court failed to make a finding that there was no reasonable expectation that UCI's wrongs would be repeated. *See O'Boskey*, 112 Idaho at 1007, 739 P.2d at 306. UCI's ongoing work on the Wood River Valley Animal Shelter was a continuous breach of the TSA. As a breaching defendant, UCI bore the heavy burden of establishing no reasonable expectation of repeated wrongdoing; however, the district court made no such finding. The closest the district court came to making this finding was a determination that there was "no evidence that UCI has done work in Blaine County recently (other than on the animal shelter, upon which it has sustained a loss)." When a party is in active breach, as UCI was, the district court may not disregard

18

that breach, even if the breaching party has arguably sustained a loss as a result of the breach. Simply because UCI claimed it had suffered a loss as a result of its breach, in no way impacts Gem State-Blaine's entitlement to a permanent injunction. As early as 2010, UCI (still Gem State-Boise at the time) bid on and performed work in Blaine County in contravention of the TSA. This breaching conduct only increased in frequency and scope after 2016. Consequently, the district court abused its discretion in denying Gem State-Blaine's request for a permanent injunction without requiring UCI to bear its heavy burden of establishing no reasonable expectation of repeated wrongdoing. While the district court granted Gem State-Blaine summary judgment on its breach of contract claim and its claim of breach of the covenant of good faith and fair dealing, it inexplicably denied Gem State-Blaine a permanent injunction, notwithstanding UCI's multiple breaches.

Second, the district court abused its discretion by relying almost entirely on Gem State-Blaine's inability to establish monetary damages in its analysis regarding irreparable harm. This was an abuse of discretion because it was inconsistent with our case law relating to injunctions. *See Cazier*, 71 Idaho at 186–87, 228 P.2d at 441. Despite finding that UCI had breached the TSA *and* the implied covenant of good faith and fair dealing, *including* an ongoing breach in its work on the Wood River Valley Animal Shelter, the district court ultimately declined to enter an injunction because Gem State-Blaine's proof of monetary damages was lacking: "[A] permanent injunction will not be issued as Gem State-Blaine has failed to prove any actual damages from UCI's conduct." However, injury may be shown without proving damages. *See id.* Difficult to prove damages are included in the type of irreparable harm that a permanent injunction is designed to prevent. This is especially true where the court has found a breach of the underlying contract, a breach of the covenant of good faith, and ongoing violation of the agreement. To permit a party to *continue breaching a contract* merely because the innocent party could not adequately prove its damages would be inconsistent with our legal principles; therefore, it constituted an abuse of discretion.

Finally, it was an abuse of discretion for the district court to conclude that Gem State-Blaine was not threatened by irreparable injury from UCI. There are not a wealth of Idaho cases explaining irreparable injury in the context of permanent injunctions requested for breach of non-compete agreements. However, in other jurisdictions, courts presented with breaches of similar agreements "have identified the following as factors supporting irreparable harm determinations:

19

*inability to calculate damages*, harm to goodwill," and "diminishment of competitive positions in [the] marketplace[.]" *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1263 (10th Cir. 2004) (italics added). The difficulty in establishing damages in these circumstances flows from Gem State-Blaine's challenge in proving a causal connection between UCI's breach and Gem State-Blaine's loss. However, the inability to prove damages inures to Gem State-Blaine's benefit when the question of whether to issue a permanent injunction arises. This case involves the breach of a non-compete agreement in the TSA which was entered into because the threat of confusion had *already* been acknowledged by the parties. There was also undisputed evidence that customers had already confused the two businesses, which precipitated the need for the TSA. The harm sought to be prevented by the TSA is the harm threatened by every action breaching the TSA; the incalculable quality of monetary damages is what makes the harm irreparable because it is so difficult to prove.

It is also important to recognize that the district court should have issued a permanent injunction to afford Gem State-Blaine the opportunity to enforce the TSA should UCI again breach it in the future. If it were to do so, Gem State-Blaine could seek contempt sanctions against UCI for its failure to abide by its agreement. This sanction alone could afford Gem State Blaine an enforceable remedy even given the difficulty of proving damages.

Because the district court abused its discretion in denying the requested injunction, we reverse the district court's order denying Gem State-Blaine a permanent injunction. On remand, the district court is directed to enter an appropriate permanent injunction enjoining UCI from any further breach of the TSA.

### C. The district court's decision denying damages is affirmed.

The district court concluded that the TSA was "essentially an anti-competition agreement[.]" As a result, the district court applied the law regarding damages for anti-competition agreements. The district court ultimately found that Gem State-Blaine had not established that it had sustained any loss relating to UCI's breach of the TSA. Relying on *Trilogy Network Systems v. Johnson*, 144 Idaho 844, 172 P.3d 1119 (2007), the district court concluded that Gem State-Blaine "failed to offer into evidence any proof as to what its costs and profits would have been had it been awarded the contracts" for the breaching projects. In particular, the district court pointed to Gem State-Blaine's profit margin since the period of recession beginning in 2008, observing that there was no proven connection between UCI's profits and any loss claimed by Gem State-Blaine.

20

The district court concluded that this rendered Gem State-Blaine's claim for damages speculative, because it had "failed to prove its damages with reasonable certainty."

On appeal, Gem State-Blaine argues that the district court ignored this Court's decision in *Saint Alphonsus Diversified Care, Inc. v. MRI Associates, LLP* [hereinafter *Saint Alphonsus*], 157 Idaho 106, 334 P.3d 780 (2014). Gem State-Blaine argues that the district court focused on its relative profit margin, an "irrelevant" fact "to the question of lost profits." Gem State-Blaine contends that the court's conclusion that damages could not be proven with "reasonable certainty" should have supported a monetary award because UCI created the uncertainty itself. Instead, Gem State-Blaine argues, the district court should have first determined whether it was more likely than not that Gem State-Blaine's lost profits were caused by UCI's conduct, and then examined the amount of damages.

UCI responds, arguing that the district court's analysis of profit margins was necessary because that was the only evidence Gem State-Blaine presented to support its claim for damages. UCI also contends that its failure to refer work was insufficient evidence that Gem State-Blaine would have actually received the work referred. UCI further argues that the district court properly kept the burden of proof on Gem State-Blaine, and that without proof of injury or damage, Gem State-Blaine was not entitled to recover money damages.

In response, Gem State-Blaine contends that it did show losses, "including sustained losses during the period in and after 2010 when the contract-breaching activity began (so far as UCI's produced records show)." Gem State-Blaine argues that it could not show evidence about lost projects "it never learned about, never evaluated, that are years old, and that UCI itself failed to produce documents about[.]"

Ordinarily, "[t]he measure of damages for the breach of an anti-competition clause is the amount that the plaintiff lost by reason of the breach, not the amount of profits made by the defendant." *Trilogy Network Sys., Inc.*, 144 Idaho at 846, 172 P.3d at 1121. However, "[t]he profits realized by the defendant may be considered by the trier-of-fact, if shown to correspond with the loss of the plaintiff." *Id.* (citation omitted). "The party seeking to recover lost profits is not required to obtain the testimony of the customers allegedly lost as a result of the wrongdoer's conduct." *Saint Alphonsus*, 157 Idaho at 116, 334 P.3d at 790 (citing *Gen. Auto Parts Co., Inc. v. Genuine Parts Co.*, 132 Idaho 849, 859, 979 P.2d 1207, 1217 (1999)).

21

> [T]he law does not require "accurate proof with any degree of mathematical certainty . . . ." *Vancil v. Anderson*, 71 Idaho 95, 105, 227 P.2d 74, 80 (1951). Damages need be proved only with a "reasonable certainty[,]" and this means "that [the] existence of damages must be taken out of the realm of speculation." *Anderson & Nafziger v. G.T. Newcomb, Inc.*, 100 Idaho 175, 182–83, 595 P.2d 709, 716–17 (1979) (citations omitted).

*Trilogy Network Sys., Inc.*, 144 Idaho at 846, 172 P.3d at 1121.

This Court found insufficient evidence of lost profits in *Trilogy Network Systems, Inc. See id.* There, after employee Johnson ended his work with Trilogy, the parties entered into a non-compete agreement stipulating that Johnson could not do business with particular clients of Trilogy for a year. *Id.* In contravention of the agreement, Johnson submitted a bid to one such client, for which Trilogy also submitted a bid. Johnson was awarded the work. *Id.* At trial, Trilogy established that Johnson had breached the agreement, but on the issue of damages the company only presented the testimony of its president stating that Trilogy would have made a comparable profit on the project. *Id.* at 847, 172 P.3d at 1122. This Court affirmed the district court's decision denying damages observing that Trilogy had not presented sufficient evidence to take the issue of damages out of the realm of speculation by simply stating a conclusion. *Id.*

We affirm the district court's finding that damages were not sufficiently proven to be brought outside the realm of speculation. Gem State-Blaine's evidence at trial about lost profits consisted entirely of its profits and profit margins over time as supported by Silvia's testimony. Its evidence about other damages, like that to its reputation, consisted entirely of hearsay statements that were ultimately not admitted at trial. Gem State-Blaine relied on the amounts that were paid to or bid by UCI for work in Blaine County as the benchmark for damages owed it, multiplying it by Gem State-Blaine's 19-year track record of profits to reach its requested damages of $220,000. Gem State-Blaine conceded loss of profit as a result of the recession in the years after 2008, but argued in its opening statement that UCI's breaching conduct caused Gem State-Blaine's losses to "[fall] further and stay[ ] down longer[.]" However, there is nothing in the record to support this assertion, much less enough to render the district court's conclusion clearly erroneous.

Gem State-Blaine asserts that the district court committed legal error when it relied on Gem State-Blaine's relative profit margin starting when the breaching conduct began. Gem State-Blaine argues that the threshold inquiry was whether Gem State-Blaine lost profits, relying on this Court's language in *Saint Alphonsus*:

22

> The party seeking to recover lost profits is not required to obtain the testimony of the customers allegedly lost as a result of the wrongdoer's conduct. *General Auto Parts Co., Inc. v. Genuine Parts Co.*, 132 Idaho 849, 859, 979 P.2d 1207, 1217 (1999). There only need be sufficient evidence in the record to allow the jury to conclude that the inference linking the wrongdoer's conduct to the claimant's damages is more probable than the inference connecting such loss to other factors. *Id.*

*Saint Alphonsus*, 157 Idaho at 116, 334 P.3d at 790.

*Saint Alphonsus* is distinguishable. In that case, a disassociated partner violated a non-compete agreement and usurped a partnership opportunity by opening an MRI facility in Meridian, Idaho, a market it had originally prevented the partnership from entering. *See Saint Alphonsus*, 157 Idaho at 114–15, 334 P.3d at 788–89. Here, Gem State-Blaine and UCI were not fiduciaries to each other in a partnership. Nor is the nature of the breaching activity the same. *Saint Alphonsus* presented the unique situation where a partnership was dissuaded by a former partner from entering a particular market, in which the former partner subsequently opened a facility in violation of a non-compete agreement. *See id.* This constituted usurpation of a partnership activity in addition to breach of a non-compete agreement. In this case, UCI's wrongful activity was limited to breach of the TSA, however flagrant. The district court did not err as a matter of law in applying the measure of damages from *Trilogy* rather than *Saint Alphonsus*. As a result, we affirm the district court's denial of damages.

### D. UCI is estopped from denying Gem State-Blaine's protectable trademark because of the TSA.

On Gem State-Blaine's claim of trademark infringement, the district court denied UCI's motion for summary judgment because, even though Gem State-Blaine's trademark had expired in 2012, there was still a genuine issue of material fact as to the existence of a protectable common-law trademark. However, following the bench trial, the district court concluded that Gem State-Blaine did *not* have a protectable common-law trademark because it had not shown first use in Blaine County, and further that the name "Gem State Roofing" was only geographically descriptive, rather than having acquired a secondary meaning.

On appeal, Gem State-Blaine argues that it established first use of the name "Gem State Roofing" in Blaine County, having begun and continued to work in Blaine County in the late 1990s, while UCI's first use of the mark in Blaine County did not begin until "around 2002." Further, Gem State-Blaine contends that by signing the TSA, UCI's predecessor conceded that Gem State-Blaine had a protectable trademark prior in right to UCI's, which would estop UCI

23

from challenging the trademark. (Gem State-Blaine cites *MWS Wire Indus., Inc. v. California Fine Wire Co.*, 797 F.2d 799, 800–04 (9th Cir. 1986) as authority of its position.)

In response, UCI contends that 2002 was merely the first year that Gem State-Blaine became *aware* that UCI had been working in Blaine County. UCI also attempts to distinguish these facts from *MWS Wire Industries*, by arguing that in *MWS Wire Industries*, there was an express provision by which the parties recognized the validity of the registered mark in question, unlike here, in which the TSA only referenced the registered trademark. UCI also contends that Gem State-Blaine did not challenge the district court's conclusion that the mark was only geographically descriptive.

Gem State-Blaine counters by arguing that UCI did not present any evidence that it used the "Gem State Roofing" mark in Blaine County prior to Gem State-Blaine. Gem State-Blaine also points out that by the language of the TSA, the parties specifically recognize the "word mark" of "Gem State Roofing."

The elements of quasi-estoppel are set out in *Thomas v. Arkoosh Produce,* which states as follows:

> [T]he doctrine of quasi-estoppel requires that the offending party must have gained some advantage or caused a disadvantage to the party seeking estoppel; induced the party seeking estoppel to change its position to its detriment; and, it must be unconscionable to allow the offending party to maintain a position which is inconsistent from a position from which it has already derived a benefit.

137 Idaho 352, 357, 48 P.3d 1241, 1246 (2002) (quoting *City of Sandpoint v. Sandpoint Indep. Highway Dist.*, 126 Idaho 145, 151, 879 P.2d 1078, 1084 (1994)).

Gem State-Blaine cites *MWS Wire Industries* to argue that, by entering into the TSA UCI conceded that Gem State-Blaine had what amounted to a common-law trademark prior in right to UCI's mark, and UCI should now be estopped from denying its existence. In *MWS Wire Industries*, MWS registered the mark "multifilar" with the United States Patent and Trademark Office. 797 F.2d at 800. The next year, California Fine Wire (CFW) published an article which used the similar term "multifiler." *Id.* MWS contacted CFW by letter, advising it of the registry of "multifilar," asserting CFW's use was an infringement, and demanding a written acknowledgment of the trademark as well as a promise to make no further use of it. *Id.* Counsel for CFW replied to this letter, acknowledging that the "multifilar" trademark appeared valid and that he had advised CFW not to infringe the trademark. *Id.* The next year, however, CFW added the word "multi-filar" to its listing in a trade product directory. MWS sued, alleging, among other things, trademark

24

infringement. *Id.* The district court entered summary judgment against MWS, declaring its trademark invalid, cancelling the trademark registration, and dismissing all MWS's claims for damages. *Id.* at 801.

On appeal, the Ninth Circuit reversed the grant of summary judgment *de novo* and remanded, concluding the district court had "erred in inquiring into the validity of the trademark before resolving the question of whether the exchange of letters" had created a contract. *Id.* If on remand the district court found that the letters constituted a settlement contract, CFW would be "estopped by virtue of that agreement from asserting the invalidity of the trademark as a defense to MWS's claims." *Id.* at 804.

Here, quasi-estoppel applies to preclude UCI's challenge of Gem State-Blaine's common-law trademark. *MWS Wire Industries* is indistinguishable from these facts and persuasive in its analysis. First, UCI gained the advantage of maintaining its primary market outside Blaine County without the threat of litigation due to its concurrent use of the business name "Gem State Roofing." Second, in return, Gem State-Blaine gave up its right to challenge UCI's registered trademark or to enter UCI's primary market. Now, UCI has taken the position that Gem State-Blaine has no protectable trademark, despite having entered into a contract recognizing an analogous right. UCI's argument is that the subject of the TSA was the registered trademark—that is, the symbol along with the business name—and that quasi-estoppel does not apply because Gem State-Blaine allowed the mark's registration to lapse. However, this position is belied by the TSA. Clause 7 in the TSA states that neither business would oppose the other's "concurrent use and registration of the *word mark* 'Gem State Roofing[.]'" (Italics added.) In other words, the TSA memorialized the obligations of the parties to each other with respect to concurrent use of the business name "Gem State Roofing." Gem State-Blaine may have let its claimed trademark lapse vis-à-vis the outside world; however, it has not lapsed with regard to UCI. Gem State-Blaine has a contract with UCI which explicitly acknowledges UCI's recognition of Gem State-Blaine's mark.

Finally, it is unconscionable in this case to allow UCI to change position regarding this matter. Black's Law Dictionary provides several definitions of "unconscionable," as follows:

> 1. (Of a person) having no conscience; unscrupulous . . . . 2. (Of an act or transaction) showing no regard for conscience; affronting the sense of justice, decency, or reasonableness . . . . Cf. conscionable. 3. Much more than is acceptable or reasonable . . . . 4. Shockingly unjust or unfair[.]

25

*Unconscionable*, BLACK'S LAW DICTIONARY (11th ed. 2019). The TSA was entered into because the parties agreed there were protectable marks involved and sought to enter into an agreement to avoid litigation surrounding these marks. And yet, despite the TSA's terms, UCI flagrantly breached the TSA on multiple occasions over a long period of time. Now, UCI denies that Gem State-Blaine has any protectable trademark. Notably, the precise reason we have trademark laws is to protect the owners of marks who have *not* reached agreements with unknown competitors. Allowing UCI to change positions on this matter would be unjust, unfair, and would effectively remove Gem State-Blaine's protection from unfair competition protected by the TSA. Accordingly, we vacate the district court's decision dismissing Gem State-Blaine's trademark infringement claim, and remand for further proceedings. Gem State-Blaine has a protectable trademark because UCI is estopped from denying its existence.

**E. Because we are directing a different result than that found by the district court, we are vacating and remanding the district court's determination that neither party prevailed.**

Before trial, UCI submitted a formal offer of judgment in the amount of $5,000, pursuant to Rule 68. Gem State-Blaine rejected this offer. After the district court's decision following the bench trial, UCI moved for an award of attorney fees and costs on two bases: (1) that UCI was the prevailing party in the case; and (2) that under Rule 68, UCI was entitled to all attorney fees and costs incurred after the offer of judgment. The district court denied UCI's request for attorney fees, concluding that there was no prevailing party.

When Gem State-Blaine appealed, UCI filed a cross-appeal, arguing that it was entitled to attorney fees and costs as the prevailing party, or at least those incurred after the offer of judgment was submitted. UCI has also argued at length on appeal about the applicability of Idaho Code section 12-120(3), which it argued to the district court but on which the district court never ruled. Idaho Code section 12-120(3) still requires that the party seeking attorney fees under this provision be the prevailing party. I.C. § 12-120(3).

Because we are reversing the district court's denial of the permanent injunction and holding that UCI is estopped from denying that Gem State-Blaine has a protectable common-law trademark, we are vacating the district court's determination that there was no prevailing party. We observe that as a result of these determinations, the balance of rulings has shifted towards Gem State-Blaine. *See Todd v. Sullivan Const. LLC*, 146 Idaho 118, 126, 191 P.3d 196, 204 (2008). On

26

remand, the district court is instructed to decide anew whether there is a prevailing party after the different resolution of Gem State-Blaine's claims.

**F. Gem State-Blaine is the prevailing party on appeal and is accordingly awarded its attorney fees and costs under the terms of the TSA.**

Both parties seek attorney fees on appeal; their requests are set out in their initial briefs as required by Idaho Appellate Rule 41. Gem State-Blaine seeks attorney fees and costs under the terms of the TSA. In response, UCI argues that Gem State-Blaine is not entitled to attorney fees under the terms of the TSA because Gem State-Blaine is not the prevailing party, having "failed to prevail on a single claim of the six it brought."

UCI asserts it is entitled to attorney fees and costs under Idaho Appellate Rule 41 because Gem State-Blaine "pursued an entire case . . . without meeting its requisite statutory burden of proof" for any of its claims, and brought an appeal "with no justification for its failure to meet the burden of proof." UCI also contends, without additional argument, that it is entitled to attorney fees on appeal under Idaho Code section 12-120(3).[8]

"Attorney fees may be awarded to the prevailing party on appeal if provided for in a contract or statute." *Davis v. Tuma*, 167 Idaho 267, 279, 469 P.3d 595, 607 (2020) (citation omitted). However, Idaho Appellate Rule 41 "is not authority alone for awarding fees." *Shawver v. Huckleberry Estates, L.L.C.*, 140 Idaho 354, 365, 93 P.3d 685, 696 (2004) (citation omitted).

The TSA reads, in pertinent part,

> If any litigation or proceeding is commenced between or among the parties or their representatives arising out of, or relating to, this Agreement, including, without limitation, a breach of any covenant, condition, representation, warranty, agreement, or provision of this Agreement, *the prevailing party* shall be entitled, in addition to such other relief as may be granted, to have and recover from the other party reasonable attorneys' fees and all costs of such action.

Gem State-Blaine has shown that the district court abused its discretion in refusing to enter a permanent injunction, that the district court erred in denying sanctions relating to the initial motion to compel, and that UCI should be estopped from denying the existence of Gem State-Blaine's common-law trademark. UCI has only prevailed on the issue of damages. We ultimately conclude Gem State-Blaine is the prevailing party on appeal. We therefore conclude Gem State-Blaine is entitled to its attorney fees and costs on appeal, based on the terms of the TSA.

---

[8] This is not to say that UCI has provided no argument on the issue at all, only to note that UCI's argument that the TSA is a "commercial transaction" for purposes of Idaho Code section 12-120(3) is part of its argument about why it was entitled to attorney fees *below*.

## IV.    CONCLUSION

For the reasons stated, the district court's decision is reversed in part, affirmed in part, vacated in part, and remanded for further proceedings. The district court's refusal to enter a permanent injunction is reversed. The district court is directed to enter a permanent injunction to enjoin UCI from any further breach of the TSA. The district court's refusal to award attorney fees and costs as a sanction for UCI's discovery violations is reversed. Likewise, we reverse the district court's conclusion that Gem State-Blaine did not have a protectable common-law trademark against UCI. We vacate the district court's determination that neither party prevailed. We also remand the case to the district court to determine whether there is now a prevailing party and to determine if attorney fees and costs should be awarded. The district court's decision denying damages is affirmed. The case is remanded for further proceedings.

Chief Justice BEVAN, Justices BURDICK, BRODY, and MOELLER CONCUR.